### BARNETT v. STEVENS ET AL.

[No. 1,896.    Filed April 17, 1896.    Rehearing denied Dec. 3, 1896.]

MECHANIC'S LIEN.—*For Material Specially Designed.—When Waived.*
—A mechanic's lien which has attached to a building on account of materials which have been specially designed and prepared for the repair of the building, but which have not been actually placed therein, is waived where the materialman, after the repudiation of the contract by the owner, and after the lien has been filed, asserts title to the materials, furnishes the same under a new and independent contract with the purchaser of the premises, and it is not revived by a judgment obtained by the original owner declaring the conveyance fraudulent. *pp. 430–438.*

SAME.—*How Obtained.*—A mechanic's lien cannot be acquired by intention, implication, inference, or contract. It can only be acquired by giving the notice prescribed by the statute after the labor has been performed or material actually or constructively furnished. *p. 437.*

From the Carroll Circuit Court. *Reversed.*

*Pollard & Pollard* and *M. Winfield,* for appellant.

*De Witt C. Justice* and *John H. Gould,* for appellees.

DAVIS, J.—The court below made a special finding of facts and conclusions of law thereon. Appellant excepted to each and every conclusion of law. Appellant also moved for judgment in his favor upon the

special finding, which was overruled, and he excepted. Appellees' motion for judgment on special finding was sustained and appellant excepted. These rulings of the court below are assigned as error. The special finding of facts and conclusions of law thereon are as follows:

"First—On the 14th day of May, 1890, the defendant, Atwater C. Barnett, was the owner, in fee simple, of lot number 47, in the original plat of the town, now city of Logansport, Cass county, State of Indiana, on which was situated a brick hotel. That on said 4th day of May, 1890, the plaintiffs, under the firm name and style of Stevens & Bedwards, and the defendant, Atwater C. Barnett, entered into a contract in writing for the furnishing of material and the performing of labor in repair upon said hotel by the said plaintiffs, to-wit:

"'LOGANSPORT, IND., May 4, 1890.
MR. A. C. BARNETT, CITY :

We propose to furnish and put in place four Victoria closets, seats and tanks, nickle-plated flushing and supply pipes; one three-stall urinal, stationary, marble, nickle-plated trimmings; change the old wash basins; put in place of compression cocks, nip low down cocks; connect all to sewer in basement; cocks, fillings and ventilation pipes all in first-class manner, for the sum of $589.00, $289.00 to be paid when the job is completed; $100.00 in 30 days; $100.00 in 60 days; $100.00 in 90 days from time job is completed.

                                   STEVENS & BEDWARDS.
                                   A. C. BARNETT.

"'In consideration that the closets and urinals are to be put in down stairs, where the present soil pipe connections are already in, and we agree to add two closets to this contract, and in the named price.

                                   STEVENS & BEDWARDS.'

"Said work and fixtures were intended by said Barnett to take the place of other urinals and closets then in said hotel, at a place then pointed out by said Barnett, and upon special designs and patterns named by said Barnett, to which plaintiffs assented. After the making of said contract the plaintiffs took the measurements in the hotel and drew the plan on paper for the proposed work, and gave the order to the planing mill for the doors and partitions, and ordered the urinals, and the marble to be cut, and the shapes required, and made the brass castings and other parts to the design and contract, and on the 20th day of June the plaintiffs had finished up, in their shops at Logansport, all of said material with the fittings and connections, and ready to be set up in the said Barnett Hotel, as provided in the contract, and the work and labor, and the value of the materials which had been used in the fashioning and building said job were, at the time, of the value of $435.00. Said material, as framed and fashioned for the Barnett Hotel, was not adapted to any other building in the city of Logansport, and could not be used in that city without considerable change and loss of value, and it was unmarketable. That on the 20th day of June, 1890, the plaintiffs had not done any work upon the hotel on lot No. 47, except the taking of the measurements aforesaid, nor had they delivered any of the material upon the grounds, but still had the same in their possession in their shops at Logansport, ready, formed and prepared for placing in position in said hotel.

"Second—That on the 20th day of June, 1890, the defendant, Atwater C. Barnett, having sold his said real estate, notified the plaintiffs in person that he had sold said hotel, and countermanded the order heretofore given on said 4th day of May, for said material

and work, and gave the said plaintiffs notice that he did not wish them to carry out said contract, and refused to allow them to put into said hotel said urinals, closets and other work, and forbade plaintiffs to carry out said contract and complete said work; and there after, on the same day, plaintiffs tendered said Barnett said urinals, closets and other work, and offered to set them up and complete them in said hotel in accordance with said contract, but Barnett refused to accept said offer, or to allow said work to be done, and requested plaintiffs to see the persons to whom he had sold said hotel about the same.

"Third—That on the 19th day of June, 1890, said Atwater C. Barnett sold his hotel to one Emily A. Clark, and executed to said Emily A. Clark a deed for said property and put the said Emily A. Clark and her husband, Len. J. Clark, in the possession of said property on the 20th day of June, 1890, and said Barnett at once left the State of Indiana, and for some time thereafter resided in the city of Chicago, in the state of Illinois. That on the day before said hotel property was sold by Barnett to Clarks, Barnett notified plaintiffs that he was about to sell, and if he should sell he would not want the improvements ordered.

"Fourth—That on the 20th day of June, 1890, the day after the sale found in item No. 3, and on the day that said Clarks took possession of said hotel, the plaintiffs filed in the recorder's office of Cass county, Indiana, a notice of their intention to hold a lien upon said property for material furnished and work done under said contract of May 4th, 1890, which was recorded in the recorder's office of Cass county, Indiana, in Miscellaneous Record 6, page 69, at 3 o'clock p. m. of said June 20, 1890, a copy of said notice in the words and figures, to-wit:

" 'To Atwater C. Barnett and All Others Whom it

May Concern: You are hereby notified that we intend to and do hold a lien upon the following described real estate to-wit: Lot No. 47 in the original plat of the town, now City, of Logansport, in Cass county, in the State of Indiana, and on the hotel building thereon situate, known as the Barnett Hotel, for the sum of $589.00 for labor performed and goods and materials furnished for repairing and altering said Barnett Hotel building on said real estate, and renovating the plumbing service of said building; said goods and materials consist of urinals, water closets, and plumbing prepared on special order, and in place, specially made and furnished for said hotel building, within 60 days last past before this notice, June 20, 1890.

A. W. STEVENS,<br>WILLIAM BEDWARDS.

" 'Received for record at 3 o'clock, p. m., June 20, 1890, and recorded in Miscellaneous Record 6, page 69.

HENRY HUBLER, Recorder Cass County.'

"Four and one-half—That on the 16th day of June, 1890, defendant Barnett notified plaintiffs in writing that he was negotiating for the sale of his hotel property, and if the sale was consummated he would not want the improvements provided for in their said contract.

"Fifth—I find that on the 20th day of June, and on the 16th day of June, 1890, the plaintiffs had ordered material for the work to be done under said contract, and had said material on hand in their shop in the city of Logansport, Cass county, Indiana, which was the place of business of the said Stevens & Bedwards, and that they had performed all of the work upon said material in adjusting it for use in said building as provided in said contract of May 4, 1890, excepting the putting in place in said building, but the plaintiffs still had, on the 20th day of June, 1890, possession of

said material in their shop at Logansport, and none of it had been delivered to the defendant, Barnett, on lot 47, nor had there been any work done on the hotel in the performance of said contract, except measurements of the place where said urinals and closets were to be placed.

"Sixth—I further find that the closets and tanks ordered by the plaintiffs to fill the contract of May 4, were such water closets and tanks as could have been used elsewhere than in the hotel upon lot 47, of the defendant, Barnett, only by expensive changes and work, they having been manufactured especially for said hotel; and the urinals could have been adjusted so as to be used in other places than in said hotel, only by expensive changes and work, they having been manufactured especially for use in said hotel at the places provided in said contract, and pointed out by said Barnett.

"Seventh—I further find that the said Emily A. Clark and her husband, Len. J. Clark, under said conveyance, remained in the possession of said hotel during the months of July and August, 1890, and from and after June 20, 1890. That on the 29th day of July, 1890, the plaintiffs, under the firm name of Stevens & Bedwards, entered into a written contract with said Emily A. Clark and Len. J. Clark, for the performance of the same labor and the furnishing of the same material on and for the hotel situated on said lot 47, which written contract is in the words and figures following, to-wit: 'This contract and agreement made and entered into this 29th day of July, 1890, by and between Stevens & Bedwards party of the first part, and Emily A. Clark and Len. J. Clark, parties of the second part, witnesseth: That said Stevens & Bedwards for and in consideration of the sum of five hundred and fifty-five dollars ($555.00), to be paid by

the said party of the second part, as hereinafter stip-
ulated, agree to furnish the materials and make and
construct the following work and repairs in and to the
Barnett Hotel building, situated upon lot number
forty-seven (47) in the original plat of the town, now
city, of Logansport, in Cass county, in the State of In-
diana, to-wit: Said party of the first part agree to set
up one three-stall urinal in the room in the basement
of said hotel where the old urinals now are; said uri-
nal to have three stalls; the sides and back and the
partitions between the stalls to be of Italian marble,
and the bottom of slate, and a urinal to be set in the
middle of the back of each stall, all the trimmings to
be nickel plated; also one automatic flushing tank, the
tank to be connected with galvanized pipe, the waste
pipes to be connected with the sewer now in the hotel,
to which the present urinal is connected; also that
they will put in six (6) Crescent Water Closets with
cherry finished seats and tanks, connect them with
lead and galvanized pipe; connect the pedestals with
the sewer now in said hotel to which the present
closets are connected; to ventilate said closets by a
ventilator extending up through the present flue
in the wall and two feet above the roof; put up parti-
tions between the water closets with panel doors hung
on hinges working both ways, each door to be pro-
vided with a sliding bolt, the partitions and doors to
be stained cherry color, to correspond with the closet
seats, and varnished; said closets to be put in the room
where the closets now are, and the same one in which
said urinal is to be placed; all the woodwork in said
room is to be stained a cherry color and varnished to
correspond with said water closets, and the walls and
ceilings of said room to be painted a steamboat white
color.

" 'It is understood between the parties that the

goods furnished are the same as those ordered by A. C. Barnett and exhibited to said party of the second part; and that all of said goods are of first-class material and all the work shall be done in first-class workmanlike manner. Said Stevens & Bedwards are to have all of the old material taken out and replaced by said new urinals and water closets. In consideration whereof the said party of the second part hereby agree to pay to the party of the first part the sum of five hundred and fifty-five dollars ($555.00) as follows: One hundred and fifty-five dollars ($155.00) to be paid when said urinal stalls are up; two hundred dollars ($200.00) in three months from date of completion of work; and two hundred dollars ($200.00) in six (6) months from date of completion of work, all payable with interest at the rate of 8 per cent. from maturity until paid, with 5 per cent. attorney's fees without relief from valuation or appraisement laws.

" 'When said work is done and said sum of five hundren and fifty-five dollars ($555.00) is paid in full as herein stipulated to be paid, then said Stevens & Bedwards are to cancel and satisfy the mechanic's lien placed by them on said hotel property for the construction and repair of said urinal and water closets.

" 'In witness whereof the parties hereto have hereunto set their hands and seals this 29th day of July, 1890.

· EMILY A. CLARK,     [Seal.]

LEN. J. CLARK,     [Seal.]

STEVENS & BEDWARDS, [Seal.] '

"And between that and about the 20th day of August the plaintiffs took the same material which had been purchased by them and fitted for the performance of the Barnett contract, and which were exhibited, at the time of the making of said contract with the said Clarks, to the said Clarks, and furnished them under

their said contract with the said Clarks, and completed the same, and the work thereon, on or about the 20th day of August, 1890; the said Barnett did not execute said contract between the plaintiffs and the Clarks, and had no knowledge of its execution at the time it was executed; and the court further finds that said contract of plaintiffs with said Clarks was not intended by the parties thereto to be a waiver of said mechanic's lien, recorded in Miscellaneous Record 6, at page 69, in the recorder's office of Cass county, Indiana.

"Eighth—I further find that on or about the 17th day of September, 1890, said Atwater C. Barnett instituted suit in the Cass Circuit Court against the said Clarks and one William H. Clark to set aside the deed made to the said Emily A. Clark for said lot 47, on the ground of fraud, and in said complaint asking for an accounting between him and the said Emily A. Clark for rents and property in said hotel used, and offering to pay back to said Clarks the balance that might be found due to the said Emily A. Clark upon such accounting. That such proceedings were had in said suit that the defendant thereto, the said Clarks, and co-defendants, Griffins, to whom the said Clarks had sold, filed a counterclaim for improvements made upon said hotel after the said 19th day of June, 1890, by them, and among the improvements claimed for were the improvements made by the said Clarks under their aforesaid contract with the plaintiffs; that a trial was had in the Cass Circuit Court and an accounting was had between the parties upon the issues thus raised, and evidence heard as to the value of improvements made by the said Clarks under their said contract with Stevens & Bedwards, and by the judgment of the Cass Circuit Court, rendered on the 15th day of May, 1891, said sale to the Clarks was set

aside and adjudged to have been fraudulent and void; and on said accounting a balance was found due to the said Clarks and Griffins in the sum of $700.00, which, by the judgment of the Cass Circuit Court, the defendant, Atwater C. Barnett, was ordered to pay, and by the judgment of said court said Barnett was put into the possession of said hotel and declared the owner thereof; that he has paid said judgment of $700.00 found due on said accounting, and has been, ever since said judgment, and still is the owner in fee of said lot 47, and in possession of the same using and appropriating the urinals, closets, and other work put in by plaintiffs under their said contract with Barnett, and their said contract with Clarks. Plaintiffs, Stevens & Bedwards, were not parties to said suit. That the defendant, Atwater C. Barnett, in said accounting was charged with the value of said improvements made by the said Stevens & Bedwards for the Clarks under said contract of July 29, 1890.

"Ninth—The present action was begun April 28, 1891, and there is a return by the sheriff of 'not found' as to Emily and Len. Clark, and a reasonable attorney's fee for the plaintiffs' attorneys in prosecuting this suit is $150.00.

"Tenth—I find that the plaintiffs performed the labor and furnished the material under their said contract with Barnett to amount and value of $589.00, of which $150.00 was paid them by said Clarks on the 20th day of August, 1890, and there was due thereon, at the time of the institution of this suit, $439.00 upon which plaintiffs should have interest to this date. That plaintiffs have received no other sum upon either of said contracts from anyone, and said $439.00 with interest, and said $150.00 attorney's fees is due plaintiffs from said defendant, Barnett, and unpaid.

"From the facts found the court concludes, as mat-

ters of law, that said contract of plaintiffs and Clarks is supplemental to said contract of plaintiffs and Barnett; that plaintiffs, by virtue of their mechanic's lien, acquired a lien on lot 47, in the original plat of the city of Logansport, Indiana, the same being in Cass county, which had effect from and after 3 o'clock, p. m., of June 20, 1890. That plaintiffs should recover of and from the defendant, Atwater C. Barnett, the sum of $690.00, of which $439.00 is principal; $101.00 interest, and $150.00 attorney's fees, and that plaintiffs have foreclosure of their mechanic's lien as aforesaid, and the sale thereof, according to law, in the satisfaction of said sum and the taxable costs against the said defendant."

The general rule is that in order to acquire a lien under our statute it is necessary for the materialman to show that the improvement was made by the authority of the owner of the real estate, and that he furnished the material for the building, and that such material was used in the building, and that within the time prescribed by the statute he filed in the office of the recorder of the county the proper notice of his intentions to hold such lien. *Clark* v. *Huey*, 12 Ind. App. 224.

The language of the statute is that such notice shall be filed "within sixty days after performing such labor or furnishing such material." Section 7257, Burns' R. S. 1894. In this connection we quote from the case last cited: "The lien is not the creature of the contract, but of the law. It is the law, and not the contract, which gives the lien."

In order to entitle a materialman to maintain a lien he must furnish the material for the purpose of being used in the building. It is not enough that the material was actually used in the building. *Jones* v. *Hall*, 9 Ind. App. 458. The materialman or laborer cannot

Barnett *v.* Stevens *et al.*

have a lien for material furnished for a building, or for work performed thereon, so long as the title to such material or work remains in the materialman or laborer. The materialman must part with his title to the material before he can acquire a lien therefor. If he may in any case assert such lien before the material has been actually used in the building, it is on the theory that the material has been furnished by him for the building under such circumstances that the title thereto has vested in the owner of the building. In this case the material and work are one and the same. Therefore, if appellees had not parted with the title to the material and work in question on the 20th of June, 1890, they did not acquire a lien upon the real estate by the notice filed on that day in the recorder's office. In other words, who owned "all of said material with fittings and connections" when the notice was filed? If the facts disclose that the title thereto was then in appellees, no lien was created by the notice, because there is no provision in the statute under which appellees could, on the 20th of June, acquire a lien for material furnished by them for the building after that date. In order to furnish material for a building, under our statute, there must be, certainly, either an actual or constructive delivery of the material at or near the building. In no event can material, the title to and possession of which is retained by the materialman or owner, be said to have been furnished for the building. It necessarily follows that a materialman cannot acquire a lien for material which he has prepared or intended for use in a building, which he has not either actually or constructively furnished at or near the building for that purpose. If he has furnished the material for the building and has filed the necessary notice to secure the lien, he cannot afterwards assert any interest in such material inconsistent with

the rights of the owner of the building and retain his lien. If he thereafter retain possession of the material, asserting title thereto as owner thereof, and sells the same to another person, he necessarily waives or abandons any lien he might otherwise have been entitled to under the notice previously filed. He cannot secure a lien for material of which he is at the time the owner. He cannot maintain a lien for material which he afterwards sells, as owner, to others.

Under the terms of the agreement entered into between appellees and appellant on the 4th of May, 1890, the appellees were required to furnish the material and perform the labor necessary for the repair of the hotel, as specified in the written proposition, for $589.00, which appellant agreed to pay in installments. On the 20th of June appellees had said material, with fittings and connections, in their shops in Logansport, of the value of $435.00, ready to set up in the hotel, in pursuance of the terms of the contract. It is true that none of the material had been at the time used in the hotel, but the work having been manufactured especially for use in the hotel, could not, except by expensive changes and work, be used elsewhere, and the only reason for not putting said material in place in the building was the refusal of appellant to allow appellees to so complete said work.

Counsel for appellees have made a strong argument in support of the proposition that after the material has been prepared by the contractor for use in the building the owner should not be allowed, under the circumstances of this case, to violate his contract and defeat the lien by refusing to permit the work to be placed in position in the building. *Charnley* v. *Honig*, 74 Wis. 165, 42 N. W. 220; *Trammell* v. *Mount*, 68 Tex. 210, 4 S. W. 377; *Kelly* v. *Rowane*, 33 Mo. App. 440;

*Howes* v. *Reliance Wire-Works Co.*, 46 Minn. 44, 48 N. W. 448.

Assuming without deciding that this position is correct and applicable to the facts as they existed on the 20th of June, 1890, the material question we will consider is, whether, under the circumstances, the appellees, in this action, can hold appellant, and his interest in the real estate, if any, liable for the value of the material with fittings and connections, afterwards used by them in the repair of the hotel. *Redmond* v. *Smock*, 28 Ind. 365.

On the 20th of June, 1890, appellant sold and conveyed the real estate in question to Emily J. Clark, who immediately entered into the possession of the premises.

Instead of relying on their rights against appellant, whatever they may have been, either under the lien or for breach of contract, the appellees, on the 29th of July, 1890, entered into a written agreement with Emily J. Clark and her husband, by the terms of which they sold to said Clarks the material and agreed to perform the work, previously ordered by appellant, for $555.00, payable in installments. Appellant was no party to this contract. It expressly provided therein that said sum of $555.00 for said material and work should be paid to appellees by Emily J. Clark and Len. J. Clark.

Prior to making the contract with Clarks, the appellees had ordered the material for the performance of the contract with appellant, and had adjusted and fitted the same for use in the hotel, but they retained possession of said material, and none of it had been delivered to appellant, nor had any work been done on the hotel in performance of said contract. There is nothing in the finding to indicate that any effort was

made by appellees after the 20th of June to carry out the contract entered into by appellant. No offer is shown to have been made by appellees to Clarks to complete the work under that contract. The strongest circumstance in favor of appellees' position is that the contract entered into between appellees and Clarks had reference to the betterment and improvement of the hotel by placing therein valuable and necessary appurtenances which were intended to become a part of the freehold. It is true that the material used is the same as that purchased and prepared by appellees under the contract with appellant, but the contract entered into between appellees and Clarks is not consistent, under the circumstances, with the theory that the work was performed or the material furnished in compliance with the original agreement between appellees and appellant.

The action proceeds upon the theory of the performance of the contract entered into between appellees and appellant, and that appellees are entitled to a personal judgment against appellant for the contract price of $589.00 and foreclosure of the mechanic's lien, notwithstanding the undisputed fact is that the repairs were made—that is to say, the materials were actually furnished and the work was performed—under the contract with Clarks for the agreed price of $555.00. The court finds in clear and express terms that the material was furnished and the work done "under their said contract with Clarks."

It is conceded that appellees furnished the material and performed the work only once, and that the lien, if one exists, was created under the contract with appellant.

Counsel for appellees contend that in pursuance of the request of appellant, and with the intention of preserving their lien, they entered into the agreement to

use, in the repair of the hotel, the material ordered by appellant, and that their agreement with Clarks was supplemental to and consistent with the agreement between them and appellant.

The contract with Clarks does not purport to be in addition to, or explanation of, the agreement with appellant. It is a new and independent contract, complete in itself. It is not consistent with the theory that the title to the material and work therein referred to, or any part thereof, was in appellant. The parties who are to pay for the repairs are different. The agreed price is changed. The time of payment is not the same. The repairs to be made and the work and material to be used therein are more specifically and minutely described in the new contract. The former contract is merely alluded to for the purpose of identifying the material to be furnished. The only reference to the lien is that it is to be released when Clarks pay the contract price. There is no stipulation or provision that the lien shall continue in force, or that it shall embrace the material to be furnished or the work to be performed under the agreement with Clarks. For aught that appears in the contract the only purpose in referring to the lien was to remove from the record an apparent cloud on the title.

It clearly appears that appellant repudiated the contract on the 20th of June, and that he refused to accept the work or to allow it to be set up in the hotel. His request is made in this connection and indicates that nothing further was to be done in compliance with the contract between him and appellees.

We assume, for the purpose of this decision, that appellant had no right to recede from the contract made between him and the appellees; that he should not then have been permitted to say that the material had not been furnished or labor performed; and that

they then had the right to stand upon their contract and enforce the lien filed by them to the extent that they had then so furnished said material and performed said work, or that they might, at their election have retained the material, or sold the same for the best price they could obtain therefor, and maintained an action against appellant for damages sustained by them on account of the breach of the contract. The appellees, however, had the right to treat the contract with appellant as abandoned or rescinded. Parsons on Contracts (8th ed.), 793.

It does not seem to have been contemplated by appellees and Clarks, when the agreement between them was made, that the original agreement between appellees and appellant should "remain in force in all its terms and conditions." Cooke v. Murphy, 70 Ill. 96. On the contrary, appellees appear to have considered that the enforcement of the lien filed on the 20th of June for the value of the materials prepared and work performed prior to that time, or a recovery for damages occasioned by appellant's breach of the contract, was of less advantage to them than the new agreement with Clarks. Bishop v. Busse, 69 Ill. 403. Whether they are entitled, in a proper action, to recover the difference in the price fixed in the two contracts on account of appellant's breach of the contract with him, is a question not before us. The change in the parties, the new contractual relation created, and the terms of the contract are such as to negative the idea that it was regarded merely as a supplement or addition to the original agreement. Conklin v. Tuttle, 52 Mich. 630, 18 N. W. 391.

If the acts of appellees subsequent to June 20, 1890, should be regarded as an election by them to treat the contract with appellant as abandoned or rescinded, this action cannot be maintained thereon. Hill v.

*Green*, 4 Pick. 114.   In our opinion the new agreement by legitimate implication disposes of any right of action against appellant on the theory of the performance of the original agreement between him and appellees. *Coyner* v. *Lynde*, 10 Ind. 282.   See, also, *Dotson* v. *Bailey*, 76 Ind. 434; *Gwynne* v. *Ramsey*, 92 Ind. 414; *Rollins* v. *Marsh*, 128 Mass. 116; *Moore* v. *Detroit Locomotive Works*, 14 Mich. 266; *Goebel* v. *Linn*, 47 Mich. 489, 11 N. W. 284.

There was no intention, so far as appears in the finding, that the lien filed on the 20th of June should embrace the materials furnished and the work performed under the contract of July 29.   The mere fact that appellees and Clarks did not intend thereby to waive the lien cannot give such vitality to it as would be inconsistent with the contracts and acts of the parties.

The acts of appellee subsequent to June 20, are, as we have seen, inconsistent with the theory that the title to the material and work in question had then vested in appellant.   The fact that the possession of such material and work then remained in appellees, and that they afterwards asserted title thereto as their own by selling the same to Clarks, precludes the idea that any lien was acquired by the notice filed on the 20th of June.   Of course, if the material had not then been furnished to appellant, or the labor performed for them, no lien was acquired for material afterwards furnished and used in the building or for labor performed thereon.   The lien can only be acquired by filing the notice after the material has been furnished or the labor performed.   A lien cannot be acquired by intention, implication, inference, or contract.   It can only be acquired by giving the notice prescribed by the statute *after* the labor has been performed or material furnished.   Whether the lien can

be acquired before the completion of his contract by the materialman, for material furnished or work performed in part compliance therewith by him before giving the notice, we do not determine.

It may be conceded that if appellees had filed notice of their intention to hold a lien under the contract with Clarks, appellant would not have been in position in a proper action, under the circumstances disclosed in the finding to defeat it. Or if they had elected to stand on their rights as they existed on the 20th of June, 1890, the writer is inclined to the opinion that appellant would not be in a position to dispute their lien to the extent of $435.00, on the theory that as matters then stood, constructively, the material had been furnished and the labor performed. Or if the work had afterwards been completed by them in compliance with the contract between appellees and appellant, it may be conceded that the lien which they attempted to acquire by the notice filed on the 20th of June could have been enforced in this action. But the lien, if any, acquired by them under the contract with appellant, having afterwards been voluntarily abandoned or waived by their act in entering into a new and independent contract with Clarks, inconsistent with the contract with appellant, for furnishing the material and performing the work in making the improvement in question, and the material having in fact been furnished and the work performed under such contract, the appellees are not, in our opinion, in a position under the circumstances of this case, for reasons hereinbefore stated, to assert or enforce against appellant in this action the lien filed on the 20th of June, 1890.

The fact that appellant has since recovered the real estate creates no liability against him in this action. As we have seen, the lien attempted to be acquired by

appellees on the 20th of June, under the May contract
with appellant, has been waived or abandoned.  No
notice was filed and no lien was acquired under the
July contract with Clarks.  Therefore, when this
action was commenced appellees had no lien on the
real estate for the material furnished and used in
making said improvements or for labor performed
thereon.

Judgment reversed, with instructions to restate
conclusions of law in favor of appellant.

Ross, J., absent.

### On PETITION FOR REHEARING.

DAVIS, J.—Counsel for appellees, on petition for re-
hearing, have earnestly and ably argued the question
involved in this appeal.  On the theory that the ma-
terial had been prepared and constructively furnished
for improvement of the hotel property prior to the
20th of June, we may assume that appellees were then
in position to enforce the lien for $435.00 against the
appellant and the property.  In other words, appel-
lant was liable for the material so furnished and the
amount was secured by the lien.  This is on the theory
that appellees had parted with the title to the ma-
terial.  They certainly could not retain the title to the
material and enforce the lien therefor against Barnett
and his property at the same time.  In other words,
if they owned the material after the 20th of June, then
it is evident that the material had not, prior thereto,
been, in fact, furnished by them in making the im-
provement.

Their right of action on the lien filed on June 20, was
waived and lost by subsequently asserting title to the
material and selling the same to Clarks.  In other
words, appellees cannot now maintain and enforce
the lien filed on June 20, for material which they after-
ward sold to Clarks, although it was subsequently

used in making the improvement. If they had filed a lien after they furnished the material for the improvement, they could have enforced it against Barnett and the property. In other words, after furnishing said material no notice of an intention to hold a lien on the property was filed. The effort, however, in this action is to enforce a lien filed on June 20, for material afterwards sold and furnished by appellees to Clarks, and subsequently used in the improvement of the hotel property.

The material must be furnished either actually or constructively for use in the improvement before the lien can be acquired. The lien can only be acquired by filing the notice as provided in the statute. It is true the material was furnished by appellees for the improvement, and that it was in fact used in the improvement of the hotel property, but it was so furnished and used after the lien sought to be enforced in this action was filed.

The fact that Barnett repudiated his contract with appellees, and that he at all times was the equitable owner of the property, and that appellees furnished the material used in making the improvement, did not create the lien. The lien is a creature of the statute, and can only be created by filing the notice after the material is furnished. In this case, it clearly appears that after the lien was filed on June 20, the appellees retained the actual possession of the material and that they subsequently sold it to Clarks, and that after they furnished and used the material in making the improvement, they filed no notice of their intention to hold the lien.

Notwithstanding Barnett accounted to Clarks for the improvement made by appellees during the time Clarks were in possession of the property, the appellees were entitled to "the fruits of their toil and in-

dustry," but the court has no power to create a lien in their favor for the purpose of securing this result.

Their misfortune arises out of the failure to file the proper notice "within sixty days after performing such labor or furnishing such material." In other words, appellees waived any rights in their favor arising out of the constructive furnishing of the material to Barnett prior to June 20, by afterwards in fact selling such material to Clarks for a different price. The fact that Barnett unjustly repudiated his contract with appellees, and that he "requested plaintiffs to see the persons to whom he had sold said hotel about the same," did not, in the absence of the statutory notice, create a lien against him or the hotel property for the material subsequently furnished and used by them in making the improvement. It clearly appears, in the same connection, that, immediately before the request was made, "plaintiffs tendered said Barnett said urinals, closets, and other work, and offered to set them up and complete them in said hotel in accordance with said contract, but Barnett refused to accept said offer or to allow said work to be done."

Assuming that this act of Barnett's was wrong and unjust, the undisputed fact remains that appellees afterwards furnished the material in making the improvement, and we know of no principle of law under which they can now enforce against Barnett and the hotel property the lien filed on June 20, for material afterwards sold by them to Clarks and subsequently used in making such improvement. If appellees had, after the 20th of June, treated the material as belonging to Barnett, or as having been furnished for the improvement under the contract with him, a different question would be presented; but on the contrary, they afterwards retained possession of the material, assumed to be the owners thereof, and sold the same

for a different price to Clarks, and, after furnishing and using the same in making the improvement failed to file any notice of an intention to hold a lien therefor.

The petition for rehearing is overruled.