FRANK B. KELLEY *vs*. JONES S. KELLEY and logs.

JOHN J. KELLEY *vs*. same.

Penobscot.    Opinion February 17, 1885.

*Lien on logs.  R. S., c. 91, § 38.*

A person who labors at hauling logs has a lien thereon for his personal services, and the services performed by his team if he has the rightful possession and control of the team, and is entitled to its earnings during the time the services were rendered, though he may not own the same.

When it appears that the services of the person, or that of his team, have in no way been performed upon the logs upon which he seeks to enforce his lien; or that the claim for services is so mingled and intermixed with other claims for which he is entitled to no lien, that it is impossible to distinguish between the two kinds; then no valid judgment *in rem* can be rendered.

ON REPORT.

The opinion states the cases and material facts.

*John Varney*, for the plaintiffs.

*A. W. Paine*, for the State of Maine Spool Wood Company.

FOSTER, J.    These are actions of assumpsit on account annexed for labor alleged to have been performed by the plaintiffs, who seek to secure a lien for their personal services, and for the services of their teams, under R. S., c. 91, § 38.

The father of the plaintiffs, the principal defendant in these suits, by whom they were employed and for whom the labor was performed, makes no appearance or defence, but the State of Maine Spool Wood Company, as owner of the lumber, appears and defends, contesting, upon several grounds, the right of these plaintiffs to any lien.

It appears that the defendant was employed under a contract in writing with said company, to operate in cutting and hauling spool wood and other lumber in the winter season of 1883-4.

That the plaintiffs labored for the defendant in the operation, does not seem to be denied, and the principal ground of defence set up to the first action, in which Frank B. Kelley is plaintiff,

is to the amount of labor performed by him and his team, consisting of two horses, and for which he claims to recover a balance of seventy-seven dollars and sixteen cents, the amount due for sixty-three and one-half days' work at the stipulated price of forty dollars a month, after deducting a credit of twenty dollars and seventy-five cents. It is not denied that he was to receive the sum of forty dollars a month for himself and team, as this appears to have been the price agreed upon at the commencement of the service.

It is claimed on the part of the company that inasmuch as the legal title to the horses employed by the plaintiff was not in him, but was in one Crooker, he can not recover for the services of the same.

We do not think this defence is tenable. The plaintiff had bargained for the horses, agreeing to pay one hundred and fifty dollars, and had in fact paid ninety dollars to the party of whom he purchased them, and there remained but sixty dollars more to be paid. It is in evidence also that the right of control and possession of the horses was in the plaintiff, and that he had the right to their services during the time in which this labor was performed, and, so far as anything to the contrary appears from the testimony in the case, such is the fact. It is no defence, therefore, that the legal title was in a third party, against whom the owners of the lumber have no cause of complaint.

Furthermore, it is urged that one of the horses was lame and unable to work during a portion of the time. But the evidence, uncontradicted, shows that the plaintiff, after the first month's service and prior to the time of the alleged lameness, had exchanged one of the horses, replacing it by another, and that the pair thus "matched" were driven by him the remainder of the time for which he claims pay for "his personal services, and the services performed by his team." Here, too, the possession and control were rightfully in the plaintiff, who was entitled to the services and earnings of the team, and whatever loss of service arose on account of the lameness of the horse exchanged, must have been borne by the defendant, the party with whom the exchange was made.

The plaintiff, as against the defendant in this suit, would be entitled to recover for his services and for the services of the team which he employed in hauling the lumber, and over which he had personal superintendence, notwithstanding the fact that the legal title to one or both of the horses might not have become vested in himself. It could make no difference in law that he might be only a bailee, so long as he was the person entitled to the compensation for their labor.

Nor is there, as against these claimants of the lumber, any valid reason why the plaintiff in this case, so far as the question of title to the horses is involved, should not be entitled to the benefit of the statute relating to lien claims. To hold otherwise would be doing violence to the spirit, if not to the letter, of a statute remedial in it objects, and calculated to make certain the payment for the labor which has actually gone to increase the value of the timber. *Oliver* v. *Woodman*, 66 Maine, 57, 58; *Spofford* v. *True*, 33 Maine, 291; *Hale* v. *Brown*, 59 N. H. 558.

When we come to consider the second suit, the plaintiff, John J. Kelley, stands in a more unfavorable light. He claims to recover one hundred and seventeen dollars and seventy-three cents, for eighty-five days' work of himself and horse at a stipulated price of thirty-six dollars a month, and for an account of twelve dollars, making in all one hundred and twenty-nine dollars and seventy-three cents, and for which a credit of fifty-two dollars and twenty-nine cents is given, leaving a balance of seventy-seven dollars and forty-four cents.

The argument in defence of this suit is founded upon the alleged fact that the plaintiff has no claim to the benefit of the statute, inasmuch as the services for which this suit is brought were not of that character for which the timber should be holden by virtue of any lien thereon. It is also urged that, notwithstanding the plaintiff may have some claim against the defendant, by whom he was employed, yet the labor was not in any way performed in cutting or hauling the timber, and that whatever services were by him rendered were done in and about the camp, filing saws, repairing sleds, keeping the time, acting as clerk, and, in his own language, rendering himself "generally useful."

With the view of the case which we have taken, it is not deemed necessary to consider these propositions to any great extent. We can very properly say, however, that one of the misfortunes of the plaintiff's case is the fact that from the evidence it is impossible to discover that the horse ever performed any services upon the lumber drawn that season. On the contrary, it appears that this horse was not used by the plaintiff, but by the defendant as occasion required in doing general work, hauling supplies, going to Bangor and elsewhere.

And so far as relates to the services of the plaintiff, we have carefully examined the testimony in the case, and find it contradictory from beginning to end, and although we may feel satisfied that he may have performed more or less labor in one way and another, and may possibly have rendered service to some extent for which he might have been entitled to a lien had he not so mingled it with that for which he is entitled to none, (*Jones* v. *Keen*, 115 Mass. 185; *Brainard* v. *Shannon*, 60 Maine, 344,) yet, from his own testimony, as was said by DANFORTH, J., in *Baker* v. *Fessenden*, 71 Maine, 293, "he has so intermixed and interwoven it with that for which he has shown none, that it is utterly impossible for the court, and probably for the parties, to make any such distinction between the two kinds as to authorize a lien judgment for any definite amount."

The charge of twelve dollars, account for labor of Edward Barrows, should be stricken from the plaintiff's account sued, and judgment rendered for balance of sixty-five dollars and forty-four cents, with interest from date of the writ, against the personal defendant, but not against the logs.

In the first suit, wherein Frank B. Kelley is plaintiff, there should be judgment against the personal defendant for the sum of seventy-seven dollars and sixteen cents, and interest thereon from the date of the writ, and a judgment *in rem* against the logs attached for the same amount.

*Judgment accordingly.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.