GEORGE M. ANGIER *vs.* BAY STATE DISTILLING COMPANY & another.

IN RE EUGENE E. BURNHAM & another.

Middlesex.    January 14, 1901. — March 1, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

Asbestos and magnesia covering placed around steam piping in a distillery, intended as a permanent covering for the metal, may be found to be furnished in the erection of a building within the meaning of Pub. Sts. c. 191, § 1, in regard to mechanics' liens.

A petitioner under Pub. Sts. c. 191, in regard to mechanics' liens, does not waive his lien by bringing an action at law for his debt and attaching the real estate against which he is seeking to enforce his lien.

Pub. Sts. c. 191, § 9, requires a suit to enforce a mechanic's lien to be begun within ninety days after the petitioner has ceased to labor on or furnish labor or materials for the building. A. filed within the required ninety days a petition to enforce a lien. B. did the same. A. after the expiration of the ninety days filed an intervening petition in the suit of B. Later B. discontinued his petition. *Held*, that A. had not lost his lien by failing to file his intervening petition within ninety days from the time he had ceased to labor, and could enforce his lien under his intervening petition in the suit begun by B.

When a round price is to be paid for labor and materials, for a part of which the law gives a lien and for another part of which there can be no lien, and there is no way of determining how much is of one kind and how much of the other, no lien can be enforced.

In a suit to enforce a mechanic's lien for labor and materials furnished for a building standing on two lots, the petition described only the front lot and the portion of the building standing thereon. The back lot did not belong to the respondent who made the contract under which the lien was claimed. The contract provided for the payment of a gross sum for certain labor and materials to be furnished for the whole building without distinguishing between the part of the building described in the petition and the part on the back lot. Certain other labor and materials were to be paid for by the piece, but there was no way of determining what proportion of the piece work was done on one part of the building and what on the other. *Held*, that on these facts no lien could be established. *Batchelder* v. *Hutchinson*, 161 Mass. 462, distinguished.

PETITION under Pub. Sts. c. 191, to enforce a mechanic's lien for labor and materials furnished in the construction of an electric light plant in a distillery in Cambridge, under an agreement made between the petitioner, Angier, and the respondent, the Bay State Distilling Company, a corporation organized under the laws of New Jersey. The petition of Angier was filed April 29, 1895.

Subsequently two intervening petitions were filed, one by Charles E. Nutter and Alfred H. Seabury, copartners under the firm name of Nutter and Seabury, to enforce a lien for labor and materials furnished in the construction of a system of steam piping in the distillery under an agreement made between Nutter and Seabury and the Bay State Distilling Company; the other by Eugene E. Burnham and Frank G. Page, copartners under the firm name of Burnham and Page, to enforce a lien for labor and materials furnished in covering certain steam pipes, drums, etc., in the distillery with asbestos covering under an agreement made between Burnham and Page and the Bay State Distilling Company. Before the trial in the Superior Court, the petitions of Angier and of Nutter and Seabury were dismissed, and the exceptions related only to the proceedings instituted by Burnham and Page.

At the trial in the Superior Court, before *Sheldon,* J., the report of an auditor was put in evidence. The following statements and extracts are taken from that report:

The buildings constituting the distillery were on the northerly side of Cambridge Street in Cambridge. The land on which they were situated consisted of two lots, the front lot abutting on Cambridge Street and the back lot lying to the north of the front lot and adjoining it. The buildings stood partly on the front lot and partly on the back lot. The line dividing the lots passed through the buildings. There was nothing on the land or in or upon the buildings to indicate where this line ran. A full description of the front lot was contained in the petitions. In each petition a lien was claimed only on the front lot and the buildings and structures thereon, though in each case a portion of the labor and materials were performed and furnished in the buildings situated on the back lot.

The report then stated the record title to the lots, showing

that at the times when the contracts were made and the labor and materials performed and furnished, the front lot belonged to the Bay State Distilling Company and the back lot to one Richard C. Sibley, both lots having been subsequently conveyed to the Great White Spirit Company.

In the matter of the petition of Burnham and Page the auditor found the following facts :

" On November 27, 1894, the petitioners and the respondent, The Bay State Distilling Company, through its agent, one Breden, having authority, made a written agreement, by which the petitioners agreed to furnish certain asbestos and magnesia covering for the system of steam piping in the respondent's distillery and the respondent agreed to pay therefor."

The offer of Burnham and Page, which was accepted by the Bay State Distilling Company and became the contract, was as follows :

" As requested by your Mr. Breden, we take great pleasure in quoting you the following prices for steam-pipe and boiler covering as per specifications rendered our salesman :

" We agree to do all such work up to ten-inch with our asbestos and magnesia sectional covering for three hundred and sixty dollars, ($360.00).   On all other work we will allow you 10 % from the enclosed list.   On all cement work we will charge you twenty cents per square foot."

The specifications signed by Breden as architect and engineer of the Bay State Distilling Company contained the following :

" Covering for two drums over boilers, 2 nozzles, 2 angle valves, 12 drum ends in front and back of boilers.   The drums and 12-inch pipe covered with plastic, the remainder of piping with sectional covering.

" The main line of pipe in at this date from boilers out through buildings, ending at first two large wooden tanks in fermenting room, direct steam pipe from boilers to 4 pumps in engine room, and to engine now up and in use, and to three pumps in kettle room, and 2 copper stills in kettle room, also direct steam pipes from old boilers to engine, and pumps in kettle room, as follows:

[Details of valves, tees and ells.]

"Also price per linear foot for each size of pipe mentioned with price for valves, tees and ells furnish a sample of your covering with your bid."

The auditor's report continued as follows : " Shortly thereafter the petitioners began the work called for by said agreement which they completed on February 16, 1895, on which date they ceased to furnish labor and materials. I find that the petitioners fully performed that part of their work described in the specifications, for which they were to receive the lump sum of $360, and that the respondent became indebted to them in that sum. I find further that other labor and materials not included in said specifications were furnished by the petitioners under the direction of said Breden, and that under the provisions in the agreement relating to such additional work and fixing the price thereof the respondent became indebted to the petitioners for said other work and materials in the sum of $335.10.

" I find that part of the labor and materials furnished by the petitioners were furnished on said front lot, on which this lien is claimed, and part on said back lot, and that of the labor and materials furnished on the front lot part were furnished under the provision in the contract calling for the payment of a lump sum of $360, and were those described in the written specifications, and part were furnished under the provisions in the agreement relating to the price to be paid for ' other work ' and ' cement work.' The same is true as to the labor and materials furnished on the back lot. The testimony did not show either as to the front or back lot what parts were furnished under each of the different provisions of the agreement.

"I find that of the total amount of labor and materials furnished by the petitioners nine tenths were furnished on the front lot and one tenth on the back lot.

" The steam pipe covering put in by the petitioners was of two kinds, called in the trade ' sectional ' and ' plastic.' The sectional covering was made by the petitioners at their factory and brought from there, or from their storehouse, in crates, to the distillery, where it was applied to the pipes by the petitioners' men. It came in three-foot sections or lengths, of different diameters for the pipes, and in shapes made to fit valves, elbows

and tees of different sizes. They were not made specially for this contract but were kept in stock in sizes up to and including a diameter of ten inches. The inside of the covering is composed of asbestos, magnesia and calcite, forming a compact mass something like plaster but not as hard. Outside of this and around it paper felt is pasted, and outside the paper is pasted a covering of canvas. The whole covering is about one and an eighth to one and a quarter inches in thickness. The sections came to the distillery split in two parts held together by the canvas cover. They were placed around the pipes and fastened thereto by brass lacquered bands which were passed through rings and clasped back. Then the canvas, which lapped over like the flap of an envelope, was pasted down. The covering was made to 'hug the pipes' rather tightly. The covering of the elbows and tees was put on in the same way as that of the pipes.

"If material, I find that the sectional covering, after being applied, can be removed by unclasping the bands and pulling up the edges where they are pasted down, but that the discoloration caused by contact with pipes, paste, handling, etc., and the cutting of the sections, when applied, to make them fit the elbows and tees, would very seriously impair, if not wholly destroy, the commercial value of the covering after removal.

"The plastic covering, which was used for pipes and other work exceeding ten inches in diameter, was brought to the distillery in bags and there mixed and applied with trowels in the same manner as plaster. It can be removed by knocking it off with a hammer or similar tool.

"Of the covering furnished according to specifications and for a fixed price approximately one half was plastic and one half sectional. Of the other covering furnished, that stated in items 12 and 13 of the petitioners' account, having a value of $55.80 according to the price named in the agreement, was plastic and the remainder sectional.

[The petitioners as above stated ceased to furnish labor or materials on February 16, 1895.]

"The certificate of lien was duly filed by these petitioners in the Registry of Deeds for the County of Middlesex on February 28, 1895. On May 14, 1895, they filed a petition to enforce their lien in the Third District Court of Eastern Middlesex. On

July 3, 1895, after service on them of notice of the petition of Angier, they filed this intervening petition to enforce their lien. By writ dated February 23, 1895, returnable into the Superior Court at Salem in the County of Essex, on the first Monday of April, 1895, these petitioners brought an action of contract against the respondent, the Great White Spirit Company, to recover the value of the labor and materials for which a lien is claimed in this petition and attached all the real estate of said Great White Spirit Company in the southern district of said County of Middlesex. The *ad damnum* of this writ was fifteen hundred dollars. By the return of the officer on said writ it appears that the attachment was made February 23, 1895, and that within three days thereafter the officer deposited a certified copy of the writ with so much of his return indorsed thereon as related to said attachment in the Registry of Deeds for the Southern District of said County. Said action is now pending.

"The answer to this petition is a general denial. The defences raised are: 1. That the labor and materials for which the lien is claimed were not furnished and used in the 'erection, alteration or repair of a building or structure situated upon real estate' within the meaning of the statute. 2. That the attachment made as aforesaid in the action at law brought against the respondent, the Great White Spirit Company, operated as a waiver of the lien. 3. That part of the labor and materials having been furnished for a fixed price, on two lots of land, only one of which was owned by the respondent, the Bay State Distilling Company, with whom the contract was made, there can be no lien for that part so furnished on said respondent's lot, because the contract cannot be divided; and that there can be no lien for the labor and materials furnished according to the contract and price list at so much per foot or piece because it is not shown what part of said labor and materials were furnished on said respondent's lot, on which the lien is claimed. 4. That although the petitioners may have filed a petition to enforce their lien in said Third District Court within ninety days after they ceased to furnish labor and materials, they cannot enforce their lien on this intervening petition because it was not filed within said ninety days.

"Subject to the revision of the court I find in favor of the

petitioners on each of the above points. I therefore find that these petitioners are entitled to a lien on the land and buildings described in their petition, the front lot, for that part of the whole amount of labor and materials furnished by them which were furnished and actually used on said front lot, namely for six hundred twenty-five dollars and fifty-nine cents, with interest from May 14, 1895, when their petition was filed."

The following additional facts were agreed at the trial: That items 12 and 13 of the petitioners' account annexed, amounting to $55.80, being "plastic work" so called, were all furnished upon the front lot; and that the title of the said front lot remained in the Great White Spirit Company continuously from the time of the conveyance to that company stated in the auditor's report down to the time of the trial, except that the land was included in a mortgage made by that company.

The respondents asked for the following rulings: 1. That on all the evidence the petition could not be maintained. 2. That the "sectional covering" so called was not furnished or used in the erection, alteration or repair of a building or structure within the meaning of Pub. Sts. c. 191, § 1. 3. That if before beginning these proceedings the petitioners caused the real estate upon which this lien was sought to be established, to be attached in an action at law brought to recover for the same labor and materials, which action remained pending down to the time of the trial, their lien was thereby waived and this petition could not be maintained. 4. That if the petitioner furnished labor or materials partly on the lot described in the petition and partly on the back lot not described therein under a single contract for a lump sum on one building situated partly on the one lot and partly on the other, a lien cannot be enforced on the lot described in the petition alone, either for the whole or a part of the contract price. 5. That the petitioners' lien cannot be enforced in these proceedings, this intervening petition not having been filed within ninety days of the time when the petitioners ceased to labor.

The judge refused to make any of these rulings and established the lien of the intervening petitioners for the sum of $804.40.

To this order and to the refusal of each of their requests for rulings the respondents alleged exceptions.

*E. F. McClennen,* for the respondents.

*H. R. Bailey,* for the intervening petitioners.

KNOWLTON, J.   1. The judge was well warranted in finding that the labor and materials furnished by the intervening petitioners, Burnham and Page, were furnished in the erection of a building, within the meaning of the Pub. Sts. c. 191, § 1. The still and pipes on which the covering was placed were a part of the building, and the material which the petitioners put on was intended as a permanent covering for the metal. Although it was possible to remove it, the removal would greatly injure it, and it was procured to be retained as long as the pipes remained.

2. The petitioners did not waive their lien by bringing an action at law and attaching the real estate.   There was no such change in the situation as when a mortgagee of personal property attaches it, and directs the officer to take possession of it and to hold it as security for a judgment to be recovered on the mortgage debt.   See *Evans* v. *Warren,* 122 Mass. 303.   Nor was the attachment like a levy by a mortgagee upon the real estate conveyed by a mortgage, under a judgment and execution obtained in a suit on the mortgage debt.   See *Atkins* v. *Sawyer,* 1 Pick. 351.   The effect of such a levy would be to obtain an absolute title to the mortgaged real estate, without allowing the time for redemption secured to the mortgagor by the statute.   Pub. Sts. c. 191, § 46, expressly saves to one having a lien of this kind a right to maintain an action at common law for his debt.

3. The judge rightly ruled that the petitioners had not lost their lien by the failure to file the intervening petition within ninety days of the time when they ceased to labor.   They seasonably filed their certificate claiming a lien, and then in due time they filed a petition to enforce their lien.   Afterwards George M. Angier having filed a petition to enforce a lien for himself, in which he set forth the proceedings previously taken by these petitioners, the petitioners, under the Pub. Sts. c. 191, §§ 16, 19, filed this intervening petition in the suit commenced by Angier, and thereupon their rights to be heard in this case were properly secured, and the subsequent discontinuance of Angier's petition did not affect their claim.   The case is not like *Davis* v. *Arthur,* 170 Mass. 449, in which the petitioner

took no measures to enforce his lien until after the expiration
of ninety days from the time when he ceased to furnish labor.

4. In one particular there was error at the trial. A large part
of the labor and materials were purchased under an entire con-
tract for a round sum, which included that put on that part of
the building which stands on the land described in the petition,
and that which was put on another part of the building that
stands on the land of another person. Other labor and materi-
als which, in like manner, were put in part on one portion of the
building and in part on the other, were to be paid for by the
piece, but there was no means of determining what proportion
of this was on the one portion of the building and what on the
other. It is settled that when a round price is to be paid for
labor and materials, for a part of which the law gives a lien, and
for another part of which there can be no lien, and there is no
way of determining how much is of one kind and how much of
the other, no lien can be enforced for either. *Jones* v. *Keen*,
115 Mass. 170. *Foster* v. *Cox*, 123 Mass. 45. *Mulrey* v. *Barrow*,
11 Allen, 152. *McGuinness* v. *Boyle*, 123 Mass. 570. *Childs* v.
*Anderson*, 128 Mass. 108. *Morrison* v. *Minot*, 5 Allen, 403.
*Felton* v. *Minot*, 7 Allen, 412. *Clark* v. *Kingsley*, 8 Allen, 543.
*Graves* v. *Bemis*, 8 Allen, 573. *Driscoll* v. *Hill*, 11 Allen,
154. This rule applies to the present case. The case of *Batch-
elder* v. *Hutchinson*, 161 Mass. 462, cited by the petitioners, is
not inconsistent with this rule. In that case there was no agreed
price, but the claim was on a *quantum meruit* for labor. A small
portion of the building extended beyond the land of the respond-
ents, on land of an adjacent owner. The petitioners were enti-
tled to a lien for so much labor as was done on that part of the
building which stood on the respondents' land. The judge found
as a fact that a certain amount in value of the labor was upon
that part of the building which stood on the respondents' land.
There was no occasion for an apportionment, or a determination
of proportions, under an entire contract for a round sum, but
simply the question how much of the labor charged in the items
by the defendant was performed on the respondents' premises.
The presiding judge, having made a finding on this question, this
court followed the finding, it not appearing clearly that there
was no evidence on which the finding could be made. In the

present case it is manifest from the facts stated that there was no way of making an apportionment between different parts of the building under the entire contract. It also seems that there was no way of showing what part of the work to be paid for by the piece was done on one portion of the building and what part on the other.

The doctrine stated in *McCue* v. *Whitwell*, 156 Mass. 205, and in *Moore* v. *Erickson*, 158 Mass. 71, 73, has no application to the present case. The principle there stated was, that when, by reason of the failure fully to perform his contract, a builder cannot recover the contract price for erecting a structure on real estate, but may recover on a *quantum meruit* for labor and materials at the rate to be paid under the contract, he may enforce the lien for the amount to which he is entitled, if he could have enforced a lien for the contract price had the contract been fully performed. It follows that the finding must be set aside.

It is agreed that two of the items of work to be paid for by the piece represent labor and materials on the respondents' premises. For these items, amounting to $55.80 and interest, the lien should be established.

*Exceptions sustained.*