## THE EVANS MARBLE COMPANY ET AL. *vs.* THE INTERNATIONAL TRUST COMPANY ET AL.

*Under Statute Giving Mechanics' Lien for Labor and Not for Materials an Indivisible Contract for Labor and Material Affords no Lien— Work Done on Materials to be Used in Building—Sub-contractor's Right to Lien.*

Under a statute providing that a mechanics' lien may be filed against a building for work done upon it but not for materials supplied, a party who supplies material and also does work on the building under an entire contract, a lump sum being payable for both the work and the materials, is not entitled to any lien.

A sub-contractor who has work done on a building for the contractor but who does not himself personally do the work is entitled to a mechanic's lien for the same under a statute which provides that the building shall be subject to a lien for the payment of all debts contracted for work done on or about the same.

When a statute provides a mechanic's lien for work done on or about a building, one who does work in his shop or elsewhere on materials to be used in the construction of the building and so used, is entitled to a lien for such work.

The Act of 1898, ch. 502, provides that every building erected in Baltimore City or repaired to the extent of one-fourth of its value shall be subject to a lien for the payment of all debts contracted for work done on or about the same. In this case the contractor for the erection of a building agreed with a marble company that the latter should supply the material and put in place the exterior marble work. This company made with B a contract by which it agreed to supply B with marble and B agreed to furnish the models and cut, carve and erect in place the exterior marble work. The marble company soon afterwards abandoned its contract and the contractor for the building took its place and made the same contract with B. The work of cutting and carving the marble was done by B at his marble yards, by his workmen under his direction, and the marble was then carried to the building and put in

place.   *Held*, that under the statute, B is entitled to a lien for the work so done; that the furnishing by him of models was not a furnishing of materials since the models do not form a part of the building; that B was not a mere superintendent or sub-contractor for labor, but did the work himself through his workmen acting under his directions.

Appeals from the Circuit Court, No. 2, of Baltimore City (SHARP, J.)

The contract between The Evans Marble Co. and E. M. Noel, referred to in the opinion of the Court, was as follows:

This agreement, made this 18th day of April, nineteen hundred and two, by and between Edgar M. Noel, party of the first part and The Evans Marble Company, parties of the second part,—

Witnesseth, for the consideration hereinafter named, the party of the second part hereby agrees to furnish and erect all of the interior marble work, marble floors, terrazo floors, etc., for the new International Trust Company's building, on Baltimore street, Baltimore, Maryland, as per plans and specifications by Mess. Parker & Thomas, architects.

It is further mutually agreed, that the above-mentioned work is to include all the work described in the specifications under the heading of interior marble work from page seventy-four (74) to seventy-nine (79) inclusive.

It is further mutually agreed between the parties hereto, that the above-mentioned work is to be entirely completed within five (5) weeks from the time the party of the first part notifies the parties of the second part in writing, that the building is ready to receive their work.   For each and every day thereafter, the work under this contract remains incomplete, the party of the second part shall forfeit the sum of twenty-five ($25.00) per day as liquidated damages.

For the faithful performance of the foregoing agreement, the party of the first part, agrees to pay to the parties of the second part the sum of six thousand two hundred and fifty dollars (6250.00) in the following manner:

Seventy-five *per centum* (75) monthly as per the architects

estimates, the balance within thirty (30) days after the completion and acceptance of the work by the architects.

In witness, whereof, etc.

After this sub-contract had been completed by The Evans Marble Company, and Noel had failed, the company endeavored to apportion the entire contract consideration of $6,250 into three items—one for materials; amounting to $1,935.24; another for work and labor done and performed in preparing, dressing and polishing the materials at the mills of the company, amounting to $2,280.22; and the balance to work and labor done at the International Trust Company building, in setting the marble, etc., amounting to $2,034.54.

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*George R. Willis*, for Bevan & Sons.

*E. Allan Sauerwein* (with whom was *Charles W. Heuisler* on the brief), for Evans Marble Co.

*Richard Bernard & Son* and *Ferdinand C. Dugan*, for the other appellants, submitted the cause on their briefs.

*Edgar H. Gans* and *W. Calvin Chesnut*, for International Trust Co., appellee.

Jones, J., delivered the opinion of the Court.

There are four appeals brought up in this record. The appellants are asserting mechanics' lien claims against a certain building located in the city of Baltimore constructed for the defendant corporation, The International Trust Company. Edgar M. Noel was the contractor with this defendant for the construction of the building and the appellants all had with him sub-contracts with reference to its construction. The proceedings below were begun by a bill filed by George T. Rosensteel, in Circuit Court No. 2, of Baltimore City, to enforce a claim for work done by him in connection with the erection of the building in question in pursuance of his sub

contract with Noel.   The executrix of Rosensteel, he having died since the institution of his suit, is the appellant here in such suit.   Others of the appellants were made parties defendant in the proceeding instituted by Rosensteel—all of these having at the time filed claims for lien against the building in question based upon their several contracts.  The Court below, after testimony and hearing, denied the relief sought in this proceeding and decreed that the liens asserted by the appellants were invalid and that their claims did not attach as liens against the building in question under the Mechanics' Lien Law as applicable to the city of Baltimore.   From that decree these appeals were taken.

The questions decided by the Court below and presented for our consideration here arise out of the defenses set up against the enforcement of the claims of lien in question by the answer of the International Trust Company.   The ground of defense which will be first noticed is one which is urged as applicable alike to all of the lien claims here in controversy and is that they all arose out of "entire and indivisible" contracts between the claimants and the said Noel for furnishing labor and materials for one entire consideration—that is one lump sum to be paid as the price of both labor and materials.   The contention as to this is that, inasmuch as the Mechanics' Lien Law in its application to the city of Baltimore provides no lien for materials furnished for the erection of buildings therein, but only for "debts contracted for work done on or about the same," the contracts in question embrace for one entire consideration both lienable and non-lienable items, and as a consequence no lien attaches under them.

The law providing for mechanics' liens and regulating their enforcement, as to the city of Baltimore, which was in force at the time of the erection of the building here in question and the making of the contracts in connection therewith, is the Act of 1898, ch. 502, the first section of which reads as follows: "Every building erected and every building repaired, rebuilt or improved to the extent of one-fourth its value, shall be subject to a lien for the payment of all debts contracted for

work done on or about the same." Prior to this Act our statute law had provided for a lien for materials furnished for any of the purposes indicated in this section of the statute of 1898 as well as for work and labor done, &c. The purpose of the last-mentioned statute was, on account of possible and actual abuse of the right, to eliminate from the Mechanics' Lien Law all right of lien for materials furnished for any of the said purposes, as respected its operation in the city of Baltimore.

The question raised by the contention of the appellee corporation, now under consideration, has never before been presented for adjudication in this Court. It has, however, been so presented in other jurisdictions; and Courts of the highest repute have maintained the proposition asserted in such contention. There is also an agreement in the text books as to the principle involved. In 2 *Jones on Liens*, sec. 1323, it is said: "When matters for which there may be a lien are mingled with others for which no lien is given they cannot be separated by a jury in accordance with oral evidence. It is not sufficient that the amount of the lien can be ascertained by extrinsic evidence but the owner of the property is entitled to be informed of that fact from the account or statement of the lien filed in accordance with the statute. If a contract be made to do the carpenter's work on certain houses and to superintend such work for a sum named, and there be no specification of the sum to be paid for work or of the sum to be paid for superintending the work no lien can be acquired under the contract. The objection is not obviated by filing an account for work alone without mentioning the matter of superintendence for when the contract is put in evidence it will appear that the entire charge was not for work but a part of it for superintendence and that there is no means of determining how much is due for work for which there might be a lien and how much is due for superintendence for which there can be no lien." In *Phillips on Mech. Liens* (3 ed.) sec. 296, the same doctrine is expressed in the following: "When the contract is for an entire sum to be paid for various services, some of which are not

lienable, no lien can be maintained for any of the work.  *  *
Under a statute which gave a lien for the performance of labor
or furnishing of materials actually used 'by virtue of any
agreement with or consent of the owner thereof', etc.   *    *
'provided that no lien for material furnished shall attach unless
the person furnishing the same shall before so doing give no-
tice to the owner of the land if such owner be not the pur-
chaser of the materials, that he intends to claim such liens,'"
"if labor and materials have been furnished by a sub-contractor
and used in the erection of a building under an entire contract,
with no stipulation for any separate price for either, and it was
impossible to determine what part of the contract price was to
be applied to either and there was no mechanics' lien for the
whole, for want of notice to the owner, it was held there could
be no lien for any part."   In 20 *Am. & Eng. Ency. of Law*, (2
ed.) 359, it is said: "When lienable and non-lienable items are
included in one entire contract for a specific sum, and the
value of the lienable and non-lienable items is not apportioned,
but is made the basis of a lumping charge, no lien can be en-
forced."   The authors support the text by the citation of au-
thorities illustrating the application of the doctrine there enun-
ciated.   These are reproduced in the brief of the appellees.

Of the cases to which reference is thus made none, perhaps,
more distinctly affirm the proposition for which the appellees
contend than those of *Morrison* v. *Minot*, 5 Allen, 403, and
*Graves* v. *Bemis*, 8 Allen, 573.   A statute of Massachusetts,
under which these cases arose, provided that no lien should
attach under the law for materials furnished for any building
when the same were not purchased by the owner of the land,
unless, before they were furnished, notice was given to such
owner that the person furnishing them intended to claim a
lien therefor.   In the case of *Morrison* v. *Minot*, 5 Allen, *supra*,
certain sub-contractors agreed with the principal contractor,
who had made a written contract to build a block of stores
for the defendant, to do the carpenter and plumbing work on
the same.   Their contract was a verbal one to do the whole
work and furnish the materials for the lump sum of $6,700.

They proceeded to perform their contract and had partly performed the same and received payments on account when they gave notice to the defendant that they intended to claim a mechanics' lien for all labor and materials which they should thereafter furnish.    No account was kept of the amount or value of materials or labor furnished before notice was so given so as to distinguish these from such as had been furnished after the notice except by way of "estimate and approximation."    The trial Court held upon these facts that the claimants were not entitled to a lien and they excepted to this ruling.    The exceptions were overruled in the Supreme Court which said that the facts showed conclusively that the "petitioners" (claimants) could not maintain their suit; that the claimants had no lien for materials furnished prior to the notice given to the owner; that "the debt due to them was for an entire sum, on the completion of their contract;" that the "contract included materials for which there never was any lien; and it was an entire contract;" that there had "therefore never been any debt due to them for labor or materials for which they could have a lien, unless the lien extended to the whole contract;" that no sum whatever had been or was then due to them for labor, or for materials furnished since the notice to the owner; that no such separate demand could be ascertained or stated.

This case was followed by that of *Graves* v. *Bemis*, 8 Allen, *supra*, in which a contractor agreed in writing to build a house for the defendant according to specifications for which defendant agreed to pay him the sum of $6,400—of which $1,000 was to be paid when the brick work was done; $1,000 when the building was ready to plaster; and the balance on the completion of the contract.    A lien claim was set up by a sub-contractor who had agreed with the principal contractor to do all mason work for the house for $2,550—to be paid $1,000 when the plastering was done and the balance on the 1st of July, 1863; and who fulfilled his contract—performing certain work described in his bill of particulars and furnishing certain materials for which he was not entitled to a lien.    It

was agreed, in the case, provided evidence to prove the same would be competent, that the contract was a profitable one; that the profit consisted in the furnishing of the labor; that the bricks furnished had a definite market value; and that the prices named in the lien—claimant's bill of particulars fairly denoted the value of the labor over and above the market value of the materials furnished at the price fixed by the contract. The trial Court gave judgment for the defendant. Upon exceptions alleged the Supreme Court sustained the judgment below; and said "the petitioner (the lien claimant) has never been entitled to any payment for labor either by express contract or by an implied contract on *quantum meruit.* The contract was entire for labor and materials, and there being no lien for the materials, there is none for the whole or any part."

The contracts involved in this controversy need not be here set out. They will sufficiently appear in the report of the cases in this record and will be found, as respects the features which affect our inquiry here (with the exception of that in No. 16 of these appeals to which more particular reference will be made), to be identical with those dealt with in the cases just reviewed. These have been cited and approved in later cases in the same jurisdiction; and elsewhere as well. There are a number of authorities that maintain the propositions they lay down and none have been cited nor have any been found that go to deny the principle that controlled their decision. Some of the cases in point are *Mulrey* v. *Barrow,* 11 Allen, 153; *Angier* v. *Bay State Distilling Co.,* 178 Mass. 163; *Baker* v. *Fessenden,* 71 Me. 292; *Kelley* v. *Kelley,* 77 Me. 135; *Adler* v. *Worlds Pastime Exposition Co.,* 126 Ill. 373; *Allen* v. *Elwert,* 29 Ore. 428; *Rinzel* v. *Stumpf,* 116 Wis. 287; *Peatman* v. *Centreville Light, Heat and Power Co.,* 105 Iowa, 1–9; *Nelson* v. *Withrow,* 14 Mo. App. 270.

The contention of the appellees which has been under consideration seems to have the support of the authorities, where the question thereby raised has come up for adjudication. We think it is also supported by reason and a proper con-

struction of the statute of this State under which the cases at bar arise. · The lien which the statute gives is of itself "a peculiar, particular and special remedy" and is "bounded and circumscribed by the terms of its own creation." 13 *Ency. of Plead. & Prac.*, 942. In the case of *Sodini* v. *Winter*, 32 Md. 130–3, it is said "this peculiar lien does not originate in contract; it is purely a creature of positive statutory enactment, to be maintained and enforced to the extent and in the mode which the statute prescribes." This was again affirmed in *McLaughlin* v. *Reinhart*, 54 Md. 76; *Wehr* v. *Shryock*, 55 Md. 334, and *Wilson* v. *Simon*, 91 Md. 1–6. In *McLaughlin* v. *Reinhart, supra*, it is also said: "It is a purely statutory lien. It presupposes a contract express or implied, which existing, the law affixes a lien to secure the payment of the mechanic or material man, for what is done and furnished. The right to compensation must exist or there can be no lien." The plain interpretation of the foregoing expressions of views by this Court is that to create a right to the lien there must be a contract for the doing of that for which the statute gives the lien, and that what the lien is designed to secure is the compensation provided in the contract for the doing of that for which the lien is provided.

As the right to the lien depends entirely on the statute, logically there can be no lien for what does not fall within the statutory provision. Now the statute here in question gives a lien to secure compensation for labor only. The contracts in the cases at bar, with the exception mentioned, are for the furnishing of both labor and materials. The compensation to be paid therefor is one entire price or lump sum for both labor and material so as to make it indistinguishable what is intended to be paid for labor and what for materials. In a contract of · this nature the profits arise out of the whole contract. No specific or definite part of the compensation is earned by the performance of labor alone; nor by the furnishing of materials alone. In the contemplation of the parties it is the inseparable intermingling of both that earns the compensation. Each dollar of the compensation, provided for, is to be paid, and when

paid, is for labor and materials so intermingled.   How can such a contract be said to fall within the scope and meaning of a statute giving a lien for labor *only*, and it may be said, one passed with that specific design?  It seems clear that such a contract does not gratify the terms of a statute which provides only for "a lien for the payment of all debts contracted for work done."   For the Courts to enforce a lien upon such a contract by undertaking, by extrinsic evidence, to fix a definite price for labor performed thereunder, apart from its connection with the materials provided for, would be for them to make a contract for the parties which they had not made for themselves; or would be to allow one of the parties to the contract, by undertaking to assign by "estimate and approximation," a definite price for the labor disconnected with the obligation to furnish materials in connection with it, to enforce a contract which he had not made and to which the other party never assented.   In consequence of the views expressed the action of the trial Court will be affirmed in the appeals numbers 14, 15 and 17—being those of The Evans Marble Company, Rosensteel, execu†rix, and Culver and Fitzpatrick, copartners.

What has been said does not apply to the lien claim of Bevan & Son, appellants in No. 16 of these appeals.   The claim in this case seems to be within the statute and it is not obnoxious to any of the objections which the appellees have urged against it.   This claim arose in this way.   Noel, the contractor for the erection of the building against which the liens here in question were filed, made with the Atlanta Marble Company, a corporation, a contract by which the said company was to furnish the material and labor for doing the exterior marble work of the building.   This was an entire contract for both labor and materials.   The Marble Company then made with Bevan a contract which provided that Bevan should "cut, carve, furnish the models and completely erect in place and finish all the exterior marble work" for the said building—the Marble Company "to deliver all the stock, sawed to dimensions, as directed by" Bevan at "his switch, at

Waverly, Baltimore." Then, after other provisions not mate-
rial to be mentioned here, the contract provided that "for the
faithful performance of the foregoing agreements, the party of
the first part (the Marble Company) agrees to pay to the
party of the second part (Bevan) the sum of fifteen thousand
dollars ($15,000)"—seventy-five per cent of this to be paid
monthly, &c., and the balance "within thirty (30) days after
·the completion" and acceptance of the work.

It appears from the evidence that this contract was not car-
ried out by Bevan with the Marble Company because "within a
few weeks after the beginning of the contract, the Marble Com-
pany failed to deliver the stone," and Noel "undertook to fur-
nish the stone to be cut for the building and then agreed with"
Bevan "to continue the work at the price originally agreed
with" the said company. Bevan then performed the work,
for which the contract provided, in pursuance of the agree-
ment with Noel and received from the latter certain payments
on account. As one of the defenses to the claim of Bevan it
is urged that he was a sub-contractor, of a sub-contractor and
therefore not entitled to a lien. We pass over, without dis-
cussion, the proposition of law asserted in this contention be-
cause the basis of fact assumed therein is shown by the evi-
dence in the case not to exist. When the Atlanta Marble
Company, which had the contract with Noel which has been
referred to, failed; and could not or did not go on with the
performance of the contract, it, in effect if not formally, aban-
doned it; and both Noel and Bevan treated the contract as
rescinded and not existing, as they had a right to do; and in
legal effect entered into a contract between themselves to be
performed according to the terms and stipulations contained in
the contract which Bevan had made with the Atlanta Com-
pany. In substance and effect and in law as well, Bevan had
the contract, under which he, here, makes his claim for a lien,
with Noel and performed the work for which he claims the
lien upon the faith of such contract.

It is also claimed that the contract of Bevan embraced ma-
terials as well as work to be furnished in that it provided that

he should furnish models for the work to be done thereunder. The furnishing of these models however was not a furnishing of materials for the building.    These were not material to go, or to be incorporated therein.    They were intended as a means of guiding and fashioning the work to be done and as an aid to the proper execution of the work; and could therefore be properly taken into account in fixing a suitable price for the same.    The contract was for work only.    The models were but an instrumentality for its accomplishment.

Again it is insisted that under the Act of 1898 a sub-contractor who furnishes work but does not personally do the work is not entitled to a lien.    The cases which have been cited in support of this view, as far as they have been brought to the attention of the Court, construe laws which in terms define who are to be entitled to the lien and have, of course, excluded from the benefit of the lien those who did not fall within the descriptions contained in the statute.    The case of *Winder* v. *Caldwell,* 14 Howard, 434, is an illustration of this. It has been held that "where statutes provide for a mechanics' lien in favor of persons furnishing materials or performing labor in the construction of buildings without qualifications with regard to the persons to or for whom the materials are furnished or the labor performed * * * a person furnishing materials to or performing labor for a contractor was entitled to a lien."    20 *Amer. & Eng. Ency. of Law,* 332. While this is not directly to the point made by the appellee's contention now under consideration it declares a principle of construction which may be applied here.    That is that the law may be held to give a lien in a case falling within its general scope and reason where there is no attempt to define specifically the persons entitled to a lien.    The Act of 1898 in its sections 11 and 14 employs the term "furnishing" work; and in section 11 expressly recognizes the right of a person "furnishing" work under a "contract with any architect or builder or any other person except the owner" to a lien upon compliance with the provisions of that section.    Bevan was not a mere procurer of labor; nor a mere superintendent or

manager of laborers.   He was employed for the work speci-
fied in his contract because of his skill and knowledge in that
class of work; and he did the work in the sense of giving it
intelligent direction and being responsible for its due execu-
tion.   His contract of employment brings him within the terms
and the reason of the statute as one furnishing work.

It is also objected against this claim for lien that a large
part of the work to be done under the Bevan contract was to
be done on materials and not on or about the building.   This
is answered by a simple reference to the contract and to the
evidence showing how the work was performed and its con-
nection with the actual construction of the building.   The
contract provided that Bevan should "cut, carve, furnish the
models and *completely erect in place and finish all the exterior
marble work for*" the building.   What was done in carrying
out this contract and the process in executing the work is de-
scribed by Bevan in his testimony as follows:   "The cars
would be placed on the switch in my yard, they would be
unloaded, the men hoist them out of the cars and unload
them in the yard, if they came to the proper size there would
be no sawing on them but they would be lifted by the der-
ricks or by hand, as the case required, into the workshops,
there the stonecutters would be put to work on them shaping
them for the special place and into the specific form required,
after finished by the stonecutters they would be loaded on the
cars and transported to the side of the building for erection,
there they would be handled by the setter and his helpers and
hoisted from the sidewalk or unloaded from the wagon first
and then hoisted from the sidewalk into the building in proper
place. "

This needs no comment; it was as much work *for* the
building and *about* its erection to thus prepare the marble and
adjust it to its proper place, as in the carpenter's work to saw
the plank and timbers to the requisite lengths and sizes and
adjust them to the proper place and position in the course of
building.

The last ground of objection to the claim under considera-

tion to be noticed is no more tenable than those to which reference has already been made. This is that there can be no lien by Bevan for work done at his shops as described in his evidence and not done at or on the building or premises. There can be no good reason for this contention. It will often contribute to economy as well as convenience in the construction of a building that necessary work in the preparation of materials for use in the course of such construction be done away from the premises. This would be especially so as to a building of the size and character of the one here in question.

The authorities are in accord with this view. In 2 *Jones on Liens*, sec. 1324, it is said "a lien may sometimes be established for work done away from the premises, if it be done upon articles which are intended for use in the building and are actually used in its construction and repair." In 20 *Am. & Eng. Ency. of Law*, 340, there is this statement of what the authorities hold "it is not essential that the work or labor for which the lien is claimed should have been performed at the site of the building upon which the lien is claimed. Thus work done in the workshop of the contractor in fitting materials for use in the building, is labor or work performed in the erection of the building." See also *Wilson* v. *Sleeper et al.*, 131 Mass. 177; *Dewing et al.* v. *Cong. Soc.*, &c., 13 Gray, 414; *Jones* v. *Keen*, 115 Mass. 170–185.

In this connection it is suggested there is significance in the use of the word "on" in the Act of 1898, sec. 1, in the provision that there shall be a lien for "debts contracted for work done on or about" a building. The effect suggested ought not to be given to the use of this word. It would be against reason; but aside from this if the word be used in the statute in the sense of contact or propinquity the words immediately following "or about" give a less restricted operation to the statute in the view in which we are now considering it. Among the meanings of the word "about" as given in Webster, are "concerning; with regard to; on account of; touching." Whatever is to be the signification therefore to be attached to the word "on" as used in the statute the use of the word

"about" in immediate connection with it relieves the statute of the restricted operation contended for in the last-mentioned objection urged to the validity of the Bevan lien. The evidence shows that the Bevan claim is not entitled to the item of $246.63, but after allowing credit generally on the account for what are shown to be proper credits he is entitled to a lien for the balance of the price of the labor performed under his contract as provided for therein. The decree below in No. 16 of these appeals must therefore be reversed.

> *Decree below reversed in part and af-
> firmed in part, costs to be paid in
> equal portions by appellants in ap-
> peals Nos. 14, 15 and 17, and by
> the appellee in No. 16, the Interna-
> tional Trust Company, and the cause
> remanded.*

(Decided April 27th, 1905.)