SETH K. HOWES and another vs. RELIANCE WIRE-WORKS COMPANY.

April 8, 1891.

Mechanic's Lien—Work for Building Done at Shop, and not on Premises.—Where "material" required for the construction or completion of a building is prepared or manufactured therefor by a contractor, in conformity with the terms of a contract between him and the owner, and the work of preparation and furnishing proceeds at the yard or shop of the contractor with the express or implied consent of the owner, such work of preparation and manufacture should be deemed a part of the construction or "furnishing" under the contract; and in such case it is immaterial, as between the parties to the contract, in respect to the contractor's right to a lien, subject to the final completion of the contract, that the work was not done on the premises.

Same—Abandonment of Work on Building.—And where the work of construction is thus in progress, no loss of lien for what has already been done under the contract is occasioned where the work is stopped or abandoned through the fault of the owner.

Same—Purchase Subject to Liens.—The vendees or assignees of the owner, who purchase expressly subject to such claims for liens, will be bound thereby, and stand in his shoes; and, if they refuse to permit the contractor to complete the work, he will be entitled to a lien to the extent of the loss sustained.

Action brought in the district court for Hennepin county, to determine the defendant's adverse claim to a lien on real estate in Minne-

apolis. A demurrer to the answer was sustained by *Hicks*, J., and the defendant appealed.

*Kitchel, Cohen & Shaw*, for appellant.

*Jackson & Atwater*, for respondents.

VANDERBURGH, J. The questions to be considered in this case arise upon the answer herein which sets up facts upon which the defendant founds a claim for a lien upon the building described therein, and which is demurred to for insufficiency by the plaintiffs. The answer shows that on the 29th day of March, 1888, the plaintiffs purchased the premises in question of one McKinney, who had erected a seven-story brick and stone building thereon, which purchase was made expressly "subject to all liens and claims for liens thereon;" and that while the building was in process of construction, on the 2d day of December, 1887, McKinney entered into a contract with the defendant, whereby the latter agreed to furnish and put into position in the building a wire inclosure for the elevator which was to be used therein, for the sum of $1,927. The contract or agreement, which is made a part of the answer, is as follows:

"We propose to furnish wire elevator inclosure for new building on Nicollet avenue, as per measurements given the writer this day, all of No. 10 wire, 1½ mesh, inch channel, iron frame, wire continuous on one side, balance from floors to ceilings, painted, bronzed, and put in position in good workman-like manner, brass elevator locks, noiseless rollers, etc., for nineteen hundred and twenty-seven dollars, payable on completion of the work. Trusting to be favored with the order, and assuring you of a good job, we are, yours respectfully, RELIANCE WIRE-WORKS Co.

"Per F. A. HALL, Pres't."

"Accepted 12–2, 1887. JAMES McKINNEY, JR."

The answer shows also that in pursuance of this contract, and immediately upon the execution thereof, the defendant undertook the construction, "and proceeded and caused to be constructed, in the manner specified in said contract, the said wire inclosure for said building." As soon as the defendant had knowledge of the sale and transfer to the plaintiffs, it notified them of the contract, and their

readiness and willingness to deliver and to put in position in the building the elevator inclosure, which had been completed by them, ready for delivery. The defendant also formally tendered a performance of the contract in this particular, which was expressly refused by the plaintiffs, who "forbade defendant to put said elevator inclosure into said building, or to place the same in position therein, and still do so refuse," and defendant alleges his readiness and willingness to deliver and place in the building the fixture, as agreed to be done. We may therefore infer from the record that the defendant had commenced the construction of the "wire inclosure," if it was not actually completed and ready for the building, before the sale by McKinney, and that it fulfilled the contract in all respects save as presented by the plaintiffs. The fixture was constructed in conformity with the contract, and was ready in due season, that is, "as soon as possible after making the contract, and was fully completed and ready for delivery as soon as was necessary in the construction of said building; and that the defendant was, on September 14, 1888, and for a long time prior thereto had been, and ever since has been, and still is, ready, able, and willing to deliver to plaintiffs, and put in place in said building, the said elevator inclosure." It was a fixture or improvement especially designed and constructed for this particular building, and presumably on the credit thereof. It was to be made and fitted in the building, and thus become a part of it. The defendant was a contractor for the construction of this improvement, and if he had brought any part of the materials on the premises, and the sale had taken place while the work was in progress, he could not have been deprived of his right to a lien upon the completion of the job in the building. But, as between defendant and McKinney, it could hardly be material that the work of construction should proceed at the shop or manufactory of the defendant instead of on the premises in question. If it was being constructed by the contractor on the credit of the building, and with the knowledge and consent of the owner, the rights and liabilities of the parties would be the same in both cases. Phil. Mech. Liens, § 150; *Hinchman* v. *Graham*, 2 Serg. & R. 169; *Wilson* v. *Sleeper*, 131 Mass. 177.

The statute must have a reasonable and practical construction. Otherwise great injustice might frequently result. In these days a large proportion of the material furnished for the construction of buildings, such as cut stone, inside finishing, etc., is prepared at the yard or shop of the contractor or manufacturer, in accordance with plans and specifications for particular buildings, with the implied consent of the owner, and which in many cases would be of comparatively little value for use elsewhere. Such work of preparation should be deemed part of the construction or "furnishing," under the contract. It differs from the case of a contract for the sale of merchantable articles or gross materials undelivered, and which are of general utility. Of course, if materials or fixtures furnished or constructed by the contractor are diverted to other purposes by him, or the contract is not completed, no liability can finally be enforced. It is otherwise where this occurs through the fault of the owner or his assignee with notice. It is true that the lien law is based on the theory of the increased value of premises, caused by the work or materials furnished; but, where the work is interrupted or materials diverted through the fault or act of the owner, obviously the rule cannot be applied technically to defeat the lien. *Esslinger* v. *Huebner*, 22 Wis. 632. And it is now well settled that no loss of lien for the work actually performed in accordance with the contract, is occasioned where the work has been stopped or abandoned in consequence of the default of the owner. Phil. Mech. Liens, § 138; *Charnly* v. *Honig*, 74 Wis. 163, (42 N. W. Rep. 220;) *Kelly* v. *Rowane*, 33 Mo. App. 440. As is well stated in the Wisconsin case: "If the contractor had completed the building according to the contract, no one would contend that he was not entitled to a lien if he had not been paid. How can he stand in a different position when he has completed it as far as the defendants would allow him, and he asks for the contract price, less the cost of finishing it? It would allow the defendants to take away from the plaintiff one of his statutory rights by a violation of their contract." In this case the fixture was not sold as a chattel or article of merchandise, but was to be manufactured, fitted, and set up in the building. The process of its construction was in fulfilment of the contract, which related to an im-

provement upon the building, and was upon the credit thereof.   De-
fendant's right to a lien therefor, subject to the final completion of
the contract, was fixed as between it and McKinney when the sale to
plaintiffs was made.   It had an inchoate lien, or claim for a lien,
which the latter could not defeat, and if after the work was in prog-
ress it had been prevented from completing the contract by him,
the defendant, if without fault on its part, would have been entitled
to a lien to the extent of the actual loss sustained.   Phil. Mech.
Liens, § 147.

2. This brings us to a consideration of the effect of the sale of
the premises to the plaintiffs.   It will be remembered that they
bought expressly "subject to all liens and claims for liens thereon,"
and it sufficiently appears that the building was new, and not fully
completed.   The answer shows that the wire inclosure in question
was completed and ready for delivery "as soon as was necessary in
the construction of said building;" and the existence of liens or
claims for liens, other than of record, might reasonably be expected,
especially where the vendor required the purchasers to take subject
to such claims, and the property was by the terms of the contract
made the primary fund for the discharge thereof, to secure him from
personal liability upon contracts which were wholly for the benefit of
the building.   As we have seen, the right of the defendant to a lien
had already attached, which it was entitled to enforce against the
property when it was sold; and we think the plaintiffs were, under
the circumstances, put upon inquiry, and were bound to take notice
of such claims, and took the property subject thereto, as part of the
risk of the purchase.   We may concede, without deciding or discuss-
ing the matter, that where the work is done away from the premises,
and no part of the material has been delivered there, contractors
proceed at their peril, as against *bona fide* purchasers and mortgagees
without notice; but such is not this case.   But we think the plain-
tiffs should, upon the conceded facts, be held to have purchased sub-
ject to the defendant's "claim for a lien" upon the premises, and
therefore stand in McKinney's shoes.   It was a claim growing out
of a contract made for an improvement of the building, and which
had been partly completed by the expenditure of labor and the use

of material "furnished" therefor by the defendant as contractor, within the meaning of the statute; and the "inclosure," when completed according to the plans and specifications, while it would not be of special value elsewhere, would presumably add value to these premises equivalent to the amount for which defendant may claim a lien. The defendant is entitled to a lien to the extent of the loss sustained by the refusal of the plaintiffs to allow the contract to be completed, measured by the value of the work and material at that date.

Order reversed.