CATON RIDGE, INC. *v.* BONNETT, ET AL.

[No. 22, September Term, 1966.]

*Decided January 26, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and FINAN, JJ.

*Allan H. Fisher, Jr.* for appellant.

*Charles J. Harrison* and *Herbert Myerberg* for appellees.

MARBURY, J., delivered the opinion of the Court.

A decree in equity, issued by Judge W. Albert Menchine of the Circuit Court for Baltimore County, allowed a mechanic's lien in favor of Gerson Bonnett and Charles F. Brandt, co-partners, trading as Bonnett and Brandt, appellees, upon a one-story, masonry nursing and convalescent home owned by Caton Ridge, Inc. (Caton), appellant. The appellees, as architects, prepared the plans and supervised the construction of the building. The decree also overruled Caton's motion for summary judgment, or in the alternative, to stay proceedings. Caton appeals from the decree and also from an earlier order overruling its demurrer.

By an agreement dated January 16, 1963, Caton engaged the appellees to prepare plans and specifications and to supervise the construction of the nursing home in Catonsville, Maryland. The contract provided that the architects' services were to consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, etc., and "the general administration of the construction contracts, and supervision of the construction of the building." The contract price for the services to be performed by appellees was $16,000 of which $14,800 was paid in various installments as provided in the contract. The failure of Caton to pay the remaining $1,200 caused appellees to file a mechanic's lien to recover that balance, and thereafter they filed a bill of complaint to enforce the lien.

Caton demurred to the bill of complaint on the ground that the laws of this State do not entitle an architect to a mechanic's lien. The demurrer was overruled on February 26, 1966, after a hearing, and Caton filed its answer alleging that appellees had performed some of their work defectively, that the building had not been completed, and that appellees were not en-

titled to payment until completion. Caton also claimed that under the contract with appellees, arbitration was a condition precedent to legal action by either party and that there had been no arbitration.

Appellees submitted interrogatories to Caton on July 12, 1965, and Caton filed its answers thereto, as well as interrogatories to appellees on August 16, 1965. Counsel for appellees desired to have a hearing on the merits scheduled in October 1965, but at the request of counsel for Caton, he agreed to a postponement of the hearing until December 1965. In a letter to appellees' counsel, Caton's counsel stated that efforts were being made by Caton to resolve a dispute with the contractor, and that settlement of said dispute might also resolve the problems in this case. Although Caton had not received answers to its interrogatories, it was agreed on November 16, 1965, that the case would be heard on its merits on December 29, 1965. Appellees' answers to Caton's interrogatories submitted to them on August 16, 1965, were filed on December 14, 1965. A copy of appellees' answers was delivered to counsel for Caton on December 15, 1965. A letter containing exceptions to some of the answers of appellees and a motion for summary judgment, or in the alternative to stay proceedings, was allegedly mailed on December 23, 1965, by Caton's counsel to the clerk of the court. The exceptions and motion were entered on the docket on December 27, 1965, thirteen days after the answers were filed. The letter containing the exceptions and motion was neither offered nor admitted in evidence, but was included in the transcript by agreement of counsel. This agreement stated, in part, "that there was no evidence in the case and the plaintiffs do not admit that said letter was actually mailed on December 23, 1965."

The motions were heard immediately prior to the hearing on the merits. On that date, Caton's president and principal witness, Joseph H. Loveman, was in Michigan for the Christmas-New Year holiday with the full knowledge and approval of counsel for Caton. The chancellor found that the answers to Caton's interrogatories were clearly inadequate, but that Caton failed to demand prompt answers to its interrogatories, and that although Caton's exceptions to the appellees' answers were

lawfully justified, they dealt with subjects already within the knowledge of Caton. The chancellor refused to allow a continuance, finding that, in the light of the agreement of counsel to proceed on the merits, Caton waived the benefits of the discovery rules, and accordingly the chancellor overruled the motions. A hearing on the merits followed, but no witnesses were called for Caton.

The question of an architect being entitled to a mechanic's lien has never been presented to this Court. The Maryland mechanic's lien law, Code (1957, 1966 Cum. Supp.), Article 63, Section 1, which this Court has no power to extend to cases beyond its obvious designs and plain requirements, *Giles v. First National Realty*, 238 Md. 203, 208 A. 2d 582, *Freeform Pools v. Strawbridge*, 228 Md. 297, 179 A. 2d 683, gives a lien in general terms for work done for or about the building erected or repaired, and for materials furnished for or about the same. It specifically permits a lien for certain types of work on the property around the building, *i.e.*, grading, filling and landscaping. It is to be construed in favor of those for whom it was enacted, and there can be no lien for anything that does not fall within its provisions. *Giles v. First National Realty, Freeform Pools v. Strawbridge*, both *supra*. In the majority of jurisdictions which have statutes giving a lien in general terms for work, labor, and materials furnished in the erection of a building, the general rule is that an architect who furnishes plans and specifications for, and supervises the construction of a building is entitled to a lien thereon. Phillips, *Mechanics' Liens*, Section 158 (2d ed. 1883) ; 36 Am. Jur., *Mechanics' Liens*, Section 54, pp. 49-50. Cases are collected in 60 A.L.R. 1257. There is no need to review the cases on point cited by the text writers and annotators, for there are dicta in favor of the prevailing rule in the decisions of this Court which resound with the resonance of which Judge Oppenheimer spoke in *Murray, Etc. v. Comptroller*, 241 Md. 383, 395, 216 A. 2d 897, *cert. denied* 385 U. S. 816 (1966). The first note was struck in *Evans Co. v. Internat. Trust Co.*, 101 Md. 210, 60 Atl. 667. The statute applicable at that time provided for a mechanic's lien to secure compensation for labor only. All but one contract (Bevan's) was found to be for both labor and materials and not within

the terms of the statute. The excepted contract provided that Bevan, an artisan, should cut, carve and furnish the models and completely erect in place and finish all the exterior marble work on the building. The Court was in harmony with the prevailing view when it stated that the law may be held to give a lien in a case falling within its general scope and reason where there is no attempt to define specifically the persons entitled to a lien. In permitting the lien the Court stated:

> "Bevan was not a mere procurer of labor; nor a mere superintendent or manager of laborers. He was employed for the work specified in his contract because of his skill and knowledge in that class of work; and he did the work in the sense of giving it intelligent direction and being responsible for its due execution. His contract of employment brings him within the terms and the reason of the statute as one furnishing work." 101 Md. at 221-22.

The decision in *House v. Fissell,* 188 Md. 160, 51 A. 2d 669, at first measure, appears to be in discord with the general rule. The Court refused to allow plaintiffs to recover by a mechanic's lien for plans for the house they built, but only because the plans were furnished gratuitously and plaintiffs were not registered architects as required by statute. See Code (1957), Article 43, Section 516. The Court did allow plaintiffs to recover under a "cost-plus" contract for the agreed percentage of profit, which included "general overhead" not separately lienable, and for certain specific items of overhead, such as premiums for workmen's compensation and liability insurance and for the cost of gasoline and oil which had become part of the cost of supplying materials for the job.

The refrain is completed by *Giles v. First National Realty,* *supra.* The subcontractor leased equipment on a rental basis. The equipment was supplied when needed, was maintained and removed at the end of the job by the lessor; but it was operated by the mechanics of the subcontractor. The answer to the question whether the lessor was entitled to a mechanic's lien turned on whether the mechanics who operated the leased equipment were employed by the lessor or lessee. The lessor had done no

work for or about the premises and was not entitled to a lien. In order for the lessor to have come within the purpose of the statute it was necessary for it to have actually participated in the performance of the work done. The lien was disallowed.

Although Caton alleged that the appellees did not properly perform their duty of supervision,[1] there is no doubt that they participated in the performance of the work. The contract between the parties provided for the drawing of plans and supervision of construction by the appellees. It was an entire contract for both and was indivisible. The compensation for all services was provided for in a lump sum. "* * * [W]hen an architect prepares plans and uses them in superintending the construction of a building, the labor of superintendence which is lienable draws to the building the work of preparing the plans, and entitles him to a lien for the value of both plans and superintendence." *Chesnow v. Gorelick,* 246 Mich. 571, 225 N. W. 4, 6 (1929). Cf. *Evans Co. v. Internat. Trust Co., supra,* where the court in refusing to atomize the contract which provided for the furnishing of models and the erection and finishing of marble, said:

> "They [the models] were intended as a means of guiding and fashioning the work to be done and as an aid to the proper execution of the work; and could therefore be properly taken into account in fixing a suitable price for the same. The contract was for work only. The models were but an instrumentality for its accomplishment." 101 Md. at 221.

We hold that where the contract between an architect and a party provides for the preparation of plans and the supervision of the erection of the building for which the plans have been prepared, the architect, having performed his contract, is entitled to a mechanic's lien under the the provisions of the mechanic's lien law.

It is disputed that Caton filed its exceptions to appellees' an-

---

1. The contract provided: "The Architect will endeavor by general administration of the construction contracts to guard the Owner against defects and deficiencies in the work of contractors, but he does not guarantee the performance of their contracts."

swers to its interrogatories within the period provided by Maryland Rule 417 c 1. Section c 1 provides that "within ten days after the *delivery* of the answers, the party submitting the interrogatories may *file* an exception * * *." (Emphasis added.) Since the rules do not require that interrogatories be filed, the phrase "within ten days after delivery" must mean within ten days after delivery of the answers to the party who submitted the interrogatories. "Delivery" is defined in Webster's Third New International Dictionary (1961) as "the act of putting property into the legal possession of another * * *." Cf. *Montgomery County Board of Education, etc. v. Glassman Construction Co., Inc., et al.,* 245 Md. 192, 225 A. 2d 448 (1966). A party submitting interrogatories must serve them on the adverse party, Rule 417 a 1, and when the party who is to answer the interrogatories, which have been properly served, fails to answer them within the specified time, the submitting party may move to strike any or all of the pleadings of the adverse party or to dismiss any or all of the action. Rule 417 d. Interpreting the rule in its entirety, the answers to the interrogatories must be put into the submitting party's legal possession by service. The date of delivery of appellees' answers to Caton's counsel was December 15, 1965. The day of the act or event after which the designated period of time begins to run is not to be included in computing the period of time prescribed in the rules. Rule 8. The tenth day was Saturday, December 25, 1965, Christmas Day, and the eleventh day was Sunday, so the time for filing was extended until Monday, December 27, 1965, on which date Caton's exceptions were filed. This leaves us with the issue of the alleged abuse of discretion by the chancellor in refusing to allow a continuance so that Caton could obtain adequate answers to its interrogatories.

Caton filed interrogatories to appellees on August 16, 1965, and received answers to them on December 14, 1965. In the interim Caton requested to have the trial date advanced and finally agreed on November 16, 1965 to a hearing on the merits on December 29, 1965. Both counsel were aware of the fact that appellees had not answered appellant's interrogatories. Caton made no formal request for appellees' answers beyond the

initial interrogatories, nor did it take the action provided for in Rule 417 d. It filed its exceptions to answers on the last day possible under the rules, knowing full well that a hearing on the merits had been scheduled for two days later and that a hearing on the exceptions would be required. Caton's position was that it had reason to believe that appellees' answers would comply with the particularity that the rules demanded. Appellees' position with regard to the exceptions was that they were intended, primarily, for the purposes of delay.

There were some indications that Caton waived the benefit of the discovery proceedings, see *Maged v. Yellow Cab Co.,* 237 Md. 340, 206 A. 2d 257, and that Caton filed the exceptions for the purposes of delay. The trial judges, who are primarily called upon to administer the rules, are vested with a sound discretion in applying them, which will not be disturbed in the absence of a showing of its abuse. *Balto. Transit v. Mezzanotti,* 227 Md. 8, 174 A. 2d 768. The chancellor felt that all of the parties had knowledge of all of the relevant, pertinent and non-privileged facts, or the knowledge of the existence or whereabouts of such facts and were able to prepare properly their claims and defenses. A review of the record indicates that the chancellor's refusal to allow a continuance was not such an abuse of discretion as to be prejudicially erroneous.

We also find no error in the chancellor's denial of Caton's motion for summary judgment. The contract provided for arbitration "at the choice of either party." It was not a mandatory provision. Neither party requested arbitration, and there was no effort by Caton up to the time of the hearing on the merits to avail itself of that provision. The case of *Eisel v. Howell,* 220 Md. 584, 155 A. 2d 509, relied upon by appellants, where submission to arbitration was mandatory, is not applicable to this case.

*Decree affirmed, appellant to pay the costs.*