## MORRIS J. LIEBERGOTT & ASSOCIATES *v.* INVESTMENT BUILDING CORPORATION, ET AL.

[No. 185, September Term, 1967.]

*Decided May 1, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, MCWILLIAMS and SINGLEY, JJ.

*Richard C. Whiteford,* with whom were *Wilbur D. Preston, Jr.* and *Due, Whiteford, Taylor & Preston* on the brief, for appellant.

*Joseph A. Lynott, Jr.,* for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Judge Raine granted summary judgment for the owner of a fifteen-story office building in Towson in an action to foreclose a mechanics' lien duly filed by an engineer, Liebergott, who at the instance of the architect had prepared structural, electrical and mechanical plans and specifications for the building, some

of which were used in the construction. Several months after work had started, Liebergott's services were dispensed with and another's engineering plans used thereafter.

Judge Raine's opinion was, in pertinent part:

"Liebergott was a design engineer employed by the architect. The contract filed as an exhibit with the motion provided 'the engineer's responsibility for services during the construction phase of the work has been removed from this agreement * * *.' In a letter dated October 20, 1965 to Mr. Charles B. Wheeler, Baltimore County official, Liebergott said 'my services, however, for field supervision and inspection were not and are not a part of the contract.' In that letter and in his letter dated November 3, 1965 to the general contractors he specifically denied responsibility for any field supervision and inspection. The affidavit of the general contractor and architect stated that Liebergott never performed any supervision during the construction of the building. The owner made a similar affidavit. Despite the contract and letters referred to, Liebergott made affidavit that he performed supervisory and inspection services as part of his contractual agreement. He filed an exhibit showing that he made ten visits to the site that involved 'inspection of progress of work.' The exhibits disclosed that the building in question is a fifteen story office building, and it is clear that the ten inspection trips by Liebergott could not possibly amount to superintendence or supervision of construction. * * * this court believes that the instant case is controlled by *Caton Ridge v. Bonnett,* 245 Md. 268. Reading and re-reading that case convinces the court that an architect or design engineer is not entitled to a mechanic's lien unless he also supervises the construction of the building. The Court of Appeals adopted a general rule that an architect who furnishes plans *and* supervises the construction is entitled to a lien (empasis supplied). * * * By any reasonable definition of the terms, supervision or superintendence,

Liebergott did neither, and therefore is not entitled to a lien."

The case was not one for summary judgment. Under *Caton Ridge v. Bonnett,* 245 Md. 268, a design engineer who prepares plans used in a building and supervises the use of his plans would be entitled to the protection of the mechanics' lien statute. Liebergott's contract with the architect did provide that his "responsibility for services during the construction phase of the work has been removed from this agreement," but the contract went on to say:

"the engineer agrees to perform the following services without additional compensation:

"He shall check and approve shop drawings and make himself available for consultation on any problems arising as a result of an error or omission generated by his office and make the necessary changes to the drawings to effect the correction.

"Any additional services shall be taken care of as described in Article 2.4 above."

Liebergott filed an answer to the owner's motion for summary judgment in which he alleged that he:

"did render supervisory services during the construction of the building and did inspect the construction of the building while it was under construction. These services were rendered while performing his duties and obligations under his contractual agreement with James H. Cosgrove (Defendant's Exhibit 1 B). These supervisory and inspection services were performed in connection with the checking and approval of shop drawings and consultations with the representative of the owner and the contractors at the job site."

Liebergott also alleged that he:

"performed * * * [his] contractual obligations [to the architect] by actually inspecting and supervising various phases of the construction of the building on numerous occasions. In connection with this, he per-

sonally supervised and/or inspected on the job site problems arising out of the location of foundations (caissons). He supervised and/or inspected the construction on the job site in connection with the compliance of the builder with his design and specifications for the placement of reinforcement in connection with the pouring of the slab. He was also required by the owner to inspect and supervise on the job site sheeting and shoring in connection with the retaining walls which were redesigned as an extra under his contract with Cosgrove. In addition to the aforegoing specific instances of supervision and inspection on the job site, the Plaintiff also visited the job site for the purpose of supervising and inspecting the construction on the dates and for the purposes shown on Plaintiff's Exhibit A attached hereto."

Liebergott filed an affidavit in proper form in opposition to the owner's motion for summary judgment, in which he supported under oath the allegations of his answer and swore:

"That Exhibit A attached to his Answer to Defendant's Motion for Summary Judgment is an accurate list of dates when he visited the job site and specific services performed on each date. Affiant says the Plaintiff's Exhibit A is not intended as an exclusive record of all services performed by him but that it is an accurate extract of his records kept in the ordinary course of business of inspection and supervision performed by him at the job site and that all such work was performed by him on the dates stated." [1]

---

1. Exhibit A showed: "(Schedule of visits to job site of Investment Building by Morris J. Liebergott and supervisory and inspection services performed on each visit).

June 7, 1965—Review of site for drainage—storm and sewer.

Aug. 11, 1965—Inspection of site with Jay Cosgrove and Ned Griffith.

Sept. 23, 1965—Consultation on site with Bill Vogel (Project Mgr. of general contractor and owner's representative Re: caissons and excavation work, review of shoring and bracing and driving

It is apparent that a genuine dispute as to material facts was created by Liebergott's sworn statements that he did in fact supervise the use in the building of the plans he prepared. It was error to hold as a matter of law that "the ten inspection trips could not possibly amount to superintendence or supervision of construction." Liebergott was dismissed at a relatively early stage of construction and could supervise or inspect only for a few months, and during those months his visits to the site were relatively frequent. In *Caton Ridge* the architect was on the site at first weekly, then every two weeks and later once a month. In the case of *Chesnow v. Gorelick,* 225 N. W. 4, 6 (Mich. 1929), relied on in *Caton Ridge,* the Court rejected the owner's contention that the architect could not have a lien because his inspections took but a small part of his time and he did not actually superintend construction. The Court said the contract permitted the architect to determine the number of visits to the site needed properly to work his plans into the building.

Since there was an issue of fact raised by the pleadings and affidavits, summary judgment could not rightly be granted. *Tellez v. Canton* R. R. Co., 212 Md. 423. If a fact is susceptible of more than one permissible inference, the one who opposes summary judgment is entitled to have a trier of fact determine

---

soldier piles. Griffith wanted approval of Plaintiff on shoring and bracing).

Sept. 24, 1965—Inspection of progress and work and driving soldier piles for sheeting and discussion of same with Ned Griffith.

Oct. 17, 1965—Inspection of progress of work on drilling caissons.

Oct. 21, 1965—Inspection of progress and review of work with Ned Griffith.

Nov. 9, 1965—Inspection of progress of work—caissons being installed, etc.

Nov. 29, 1965—Inspection of progress of work—caissons.

Dec. 14, 1965—Inspection of progress of work—reviewing work being installed.

Dec. 30, 1965—Inspection of progress of work—reviewing reinforcing placement in 1st garage level with Griffith, Silverman and supervisor. Reinforcing installed improperly—showed supervisor how reinforcing was supposed to be installed. Inspected elevator pits, floor and walls."

the correct inference. *Reeves v. Howar,* 244 Md. 83; *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11.

Since the decision below on remand may turn entirely on whether Liebergott comes factually under *Caton Ridge,* we need not and do not decide whether a design engineer who under contract prepares plans for a building, which are used in the construction of the building, but who does not supervise or superintend construction is entitled to a mechanics' lien for unpaid services.

It is appropriate, nevertheless, to say that in our view Judge Raine read too much into *Caton Ridge* when he found it to hold that an architect who prepared plans but did not supervise was not within the coverage of the mechanics' lien statute. That question was neither decisive nor decided in *Caton Ridge* since there the architect did both, and all we needed to decide and all we did decide was whether an architect who did both was covered.

It should be noted that an architect or engineer who under a contract prepares plans for a building which are used in that building is within the literal coverage of Code (1968 Repl. Vol.), Art. 63, § 1, which gives a lien on a building "for the payment of all debts contracted for work done for or about the same * * *." Preparation of plans used in the erection of a building literally is work done for the building. *Cf., Peerless v. Prince George's County,* 248 Md. 439.

The cases throughout the country seem to be about equally divided where there is preparation of plans which are used but no supervision or superintendence. See the cases collected in the annotation in 60 A.L.R. 1257, 1267 (1927). Some of the older cases refused to allow a lien in such situation on the ground that preparing plans was not manual labor and the lien statute was intended to protect only mechanics and artisans who furnished physical labor. That ground of construction of the lien statute would not seem tenable in Maryland. *Caton Ridge, supra,* and *see Evans Co. v. Internat. Trust Co.,* 101 Md. 210, 221.

An excellent analysis of the cases both ways is to be found in *Gaastra, Gladding & Johnson v. Bishop's Lodge Co.,* 299 P.

347 (N. Mex. 1931), which concluded that a non-supervising architect was entitled to a lien where under contract he prepared plans that were used in the construction of the building.

*Judgment reversed, with costs, and case remanded for further proceedings.*