505 A.2d 533

**5500 COASTAL HIGHWAY LIMITED PARTNERSHIP**

**v.**

**ELECTRICAL EQUIPMENT CO., INC.**

**Nos. 100, 101, Sept. Term, 1985.**

Court of Appeals of Maryland.

March 7, 1986.

Nicholas T. Exarhakis (Ayres, Jenkins, Gordy & Almand, P.A., on brief), Ocean City, for appellant.

Raymond R. Jarvis III (Jarvis & Hyle, on brief), Ocean City, for appellee.

Argued Before SMITH, ELDRIDGE, COLE, RODOW-SKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

SMITH, Judge.

In this case we shall hold that suppliers of materials to a modular home builder in Delaware are entitled to mechanics' liens on a building constructed of those modules in Ocean City, Maryland.

Electrical Equipment Company, Inc., and Noland Company each filed mechanics' lien claims in Worcester County against 5500 Coastal Highway Limited Partnership and its

building known as Tiffanie By The Sea Condominium. The cases were consolidated for the purpose of decision in the Circuit Court for Worcester County. The trial judge in each case directed the establishment of a lien. 5500 Coastal Highway Limited Partnership appealed to the Court of Special Appeals in each case. On our own motion we directed that writs of certiorari be issued prior to argument in the intermediate appellate court in order that we might address the important public question here presented. We ordered that the two cases be argued the same day. We consolidate the cases for the purpose of our opinion.

Appellant takes no issue on appeal with the findings of fact of the trial judge. Accordingly, we set forth the facts as found by the trial judge:

"In each case, the owner of property in Ocean City, Maryland, the Defendant entered into a contract with a modular home builder in Delaware, Virginia Homes, for Virginia Homes to build and deliver to Defendant's Maryland building site modular units which were then to be stacked one on top of another and therefore to be incorporated into a condominium (or multi-unit) project known and advertised as 'Tiffanie By The Sea'. Upon the creation of the contract, Virginia Homes (not a party to the instant cases and allegedly in a state of bankruptcy) then contracted with materialmen to supply materials for the construction of the 'Tiffanie' modules at the Virginia Homes Delaware plant. The Plaintiffs in these cases were two of such materialmen. ... Electrical Equipment Company, allegedly supplied electrical equipment which was incorporated in the units. ... Noland Company, allegedly supplied plumbing, etc., equipment which was incorporated into the modules.

"In each case most, if not all, of the Plaintiff's invoices to Virginia Homes had indicated on their face that the materials were being supplied for the specific project 'Tiffanie By The Sea'. Additionally, there was uncontradicted testimony that the 'Tiffanie By The Sea' project was the only modular project being constructed in the

Virginia Homes Delaware plant at the time during which the materials were delivered. ... Electrical Equipment Company, Inc., presented evidence that they visited the Delaware plant and observed the 'Tiffanie' modules being constructed from material that included Electrical's materials shipped for the 'Tiffanie' project. They further testified that they visited the modules at 'Tiffanie By The Sea' after they had been delivered to the Ocean City, Maryland site and had seen the material they sold to Virginia Homes for the 'Tiffanie' project actually in the 'Tiffanie' units at the Maryland construction site.

"... Noland Company presented evidence that its employee and agent, a Mr. Willen, testified that he was approached by Virginia Homes to give a quote on the 'Tiffanie' project, and that eventually Noland Company supplied materials for the 'Tiffanie' project to the Delaware plant of Virginia Homes for incorporation into the 'Tiffanie' modules. He testified that on his visits to the Delaware plant of Virginia Homes he observed the material shipped by Noland Company actually being incorporated into the modules. He testified that as the modules came off the assembly line they were on wheels and towed or driven directly to the construction site in Maryland. He testified that he had visited the Maryland construction site and verified that some of the units that he had seen built in the Delaware plant were actually on the site of 'Tiffanie By The Sea'. On cross-examination he revealed that he had followed three (3) units (two of which he had been through while they were on the Delaware assembly line) from Virginia Homes' plant to the 'Tiffanie By The Sea' project in Ocean City."

The judge concluded:

"Accordingly, the Court holds that where there is a prior contract between a modular home manufacturer, (whose factory is in or out of state), and an owner of Maryland real property, to which and on which the modules are to be delivered and erected, and the manufacturer produces the modules pursuant to the contract with

the owner and where the materialmen furnish materials pursuant to specific quotes on the project and invoices them to the project, said materialmen have the right to claim a lien under the statute. In the event however, that such a manufacturer produces modules for stock purposes and later sells modules under contracts made after the modules are constructed a materialman's lien would not lie against the real property of such subsequent purchaser."

Some idea of what took place here may be gleaned from the testimony of a witness for Noland who said:

"I actually saw, on several occasions, on two different occasions that I know of, I saw the units actually being lifted off of the trailers that have come from Georgetown [, Delaware,] and lifted and being put on the concrete pads on the job site."

Maryland Code (1974) § 9–102, Real Property Article, provides in pertinent part relative to mechanics' liens:

"(a) *Buildings.* Every building erected ... is subject to establishment of a lien in accordance with this subtitle for the payment of all debts, without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building, including the drilling and installation of wells to supply water, the construction or installation of any swimming pool, the sodding, seeding or planting in or about the premises of any shrubs, trees, plants, flowers or nursery products, and the grading, filling, landscaping, and paving of the premises."

■ The lien exists purely by virtue of statute. *Himmighoefer v. Medallion Industries, Inc.*, 302 Md. 270, 278, 487 A.2d 282, 286 (1985); *Freeform Pools v. Strawbridge*, 228 Md. 297, 301, 179 A.2d 683, 685 (1962). It follows, therefore, that there can be no lien for anything which does not fall within the statutory provision. This Court has no power to extend the mechanic's lien law to cases beyond its obvious design and plain requirements. *Caton Ridge v.*

*Bonnett,* 245 Md. 268, 272, 225 A.2d 853, 855 (1967). Despite these restrictions, however, the statute is to be construed in favor of those for whom it was enacted. *Caton Ridge,* 245 Md. at 272, 225 A.2d at 855.

It is the contention of the appellant that the lienors here do not have claims "for work done for or about the building and for materials furnished for or about the building . . . ." It is argued:

"Under Maryland law a modular living unit must be stamped as habitable prior to its shipment into the State. Of course, final plumbing and electric hook-up will be made at the site, but the unit is a completed structure prior to its introduction into Maryland. The modular units herein were constructed in the State of Delaware at the Virginia Homes, Incorporated location. As stated above, the Appellee's material was delivered to Virginia Homes where, by their own testimony, the Appellee viewed the construction of the building."

The Maryland law to which reference was made apparently is Code (1957, 1982 Repl.Vol.) Art. 41, § 266EE–1 et. seq. known as the Industrialized Building and Mobile Homes Act. The modules here in question would be industrialized buildings within the purview of the definition set forth in § 266EE–2. Provision is made in § 266EE–4 for inspection and for industrialized buildings certified by the Department of Economic and Community Development to bear insignia furnished by the Department. The fact that § 266EE–4(b) relative to unannounced inspections makes provision for certain of the costs to include "total travel cost on published air fare, or equivalent rate, between Baltimore and the location of the factory, plus necessary supplemental surface transportation and reimbursement for food and lodging consistent with allowances for Maryland State employees" would give rise to the inference that inspections without the State of Maryland were contemplated. The fact of such inspection and the requirement for such insignia is not dispositive of the issue before the Court. Work must be

done at the building site relative to any module or group of modules.

Although this is a case of first impression in Maryland, two of our earlier cases point in the direction contended for by the lienors in that they have permitted the establishment of liens for work done away from the building site. *Liebergott v. Investment Bldg.*, 249 Md. 584, 241 A.2d 138 (1968), involved the claim of an engineer employed by an architect to prepare structural, electrical and mechanical plans and specifications for a building. In holding that he could establish a lien, Chief Judge Hammond said for the Court:

> "It should be noted that an architect or engineer who under a contract prepares plans for a building which are used in that building is within the literal coverage of Code (1968 Repl.Vol.), Art. 63, § 1, which gives a lien on a building 'for the payment of all debts contracted for work done for or about the same * * *.' Preparation of plans used in the erection of a building literally is work done for the building. *Cf., Peerless v. Prince George's County*, 248 Md. 439 [237 A.2d 15 (1968)]." 249 Md. at 590, 241 A.2d at 141.

*Evans Co. v. Internat. Trust Co.*, 101 Md. 210, 60 A. 667 (1905), was concerned, among other claims, with that of a subcontractor who, as the Court put it, made "a contract which provided that [he] should 'cut, carve, furnish the models and completely erect and place and finish all the exterior marble work' for the said building—the Marble Company 'to deliver all the stock sawed to dimensions, as directed by' [the subcontractor] at 'his switch, at Waverly, Baltimore.'" The Court said:

> "The last ground of objection to the claim under consideration to be noticed is ... that there can be no lien by Bevan for work done at his shops as described in his evidence and not done at or on the building or premises. There can be no good reason for this contention. It will often contribute to economy as well as convenience in the construction of a building that necessary work in the

preparation of materials for use in the course of such construction be done away from the premises. This would be especially so as to a building of the size and character of the one here in question." 101 Md. at 222–23, 60 A. at 671.

On the right to a mechanic's lien for labor or work in case of preparatory or fabricating work done on materials intended for use and used in a particular building or structure see Annot., 25 A.L.R.2d 1370 (1952). Liens for off-site work or materials have been allowed in *Grainger & Co. v. Johnson,* 286 Fed. 833 (6th Cir.) *cert. denied,* 262 U.S. 749, 43 S.Ct. 524, 67 L.Ed. 1213 (1923); *Wells v. Christian,* 165 Ind. 662, 76 N.E. 518 (1906); *Daley v. Legate,* 169 Mass. 257, 47 N.E. 1013 (1897); *Berger v. Turnblad,* 98 Minn. 163, 107 N.W. 543 (1906); *Howes v. Reliance Wire-Works Co.,* 46 Minn. 44, 48 N.W. 448 (1891); and *Timber Structures v. C.W.S.G. Wks.,* 191 Or. 231, 229 P.2d 623 (1951).

57 C.J.S. *Mechanics' Liens* § 39 (1948) states:

"It is not essential that the work or labor for which a lien may properly be claimed should be performed on the premises where the building or structure is being erected or the improvement is being made, provided it is necessarily connected with the construction or improvement on the premises. Thus work done in the workshop or yard of the contractor, in fitting materials for use in the building, is labor or work performed in the erection of the building." (Footnotes omitted.)

We have located two cases from without the State which deal with modular construction. In *C & W Elec. v. Casa Dorado Corp.,* 34 Colo.App. 117, 523 P.2d 137 (1974), the court refused to allow a mechanic's lien for work done before the order was placed. As the court put it, "Such work was not performed 'at the instance of the owner or any other person acting by his authority.'" 34 Colo.App. at 120, 523 P.2d at 139. One would infer from the language

used that if the modules had been constructed to order, a lien would have been entered. The second case is *Woodson Bend, Inc. v. Masters' Supply, Inc.*, 571 S.W.2d 95 (Ky. App.1978). The claim was for materials furnished for the construction of modules away from the actual building site. The court said:

> "The protection afforded by the Kentucky mechanic's lien law extends to the materialman who furnishes material to a remote subcontractor, away from the job site, so long as the material is ultimately used to improve the property involved. Because the appellees were materialmen of a contractor, it is unnecessary to extend the scope of the mechanic's lien statute to its maximum limit in order to sustain the appellees' lien rights." 571 S.W.2d at 101.

Missouri law allows a mechanic's lien for an architect's services. In *Dent v. Cohen*, 537 F.Supp. 214 (E.D.Mo.1982), a lien was allowed for architectural work done in Kansas in connection with a building erected in Missouri.

We do not regard as significant the fact that the materials were originally delivered in Delaware to the modular builder. We do regard as significant the fact that these materials were incorporated into the building of Tiffanie By The Sea. No matter how advanced modular construction may be, once the modules arrive at the building site there is work that must be done. Prior to their arrival a foundation had to be laid. The modules must be put in place and formed into a whole. The whole must be roofed in some fashion. Inevitably the wiring and the plumbing in the modules must be connected up at the site. A module is not in and of itself a building. We hold that Judge Cathell was correct in directing that mechanics' liens be entered in these cases. The claims here were for "materials furnished for or about the building . . . ."

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.