675 A.2d 571

**WESTPOINTE PLAZA II LIMITED PARTNERSHIP**

v.

**KALKREUTH ROOFING & SHEET METAL, INC.**

No. 816, Sept. Term, 1995.

Court of Special Appeals of Maryland.

May 1, 1996.

Glenn C. Etelson (Conroy, Ballman & Dameron, on the brief), Gaithersburg, for appellant.

Matthew B. Ruble, Frederick, for appellee.

Argued before MOYLAN, FISCHER and CATHELL, JJ.

FISCHER, Judge.

Westpointe Plaza II Limited Partnership (Westpointe) appeals from an order of the Circuit Court for Frederick County that granted Kalkreuth Roofing & Sheet Metal, Inc.'s (Kalkreuth) motion to establish and enforce a mechanics' lien against Westpointe. The circuit court granted Kalkreuth's motion after Westpointe failed to obey the court's Show Cause Order directing Westpointe to file a counter-affidavit or verified answer detailing why the circuit court should not grant Kalkreuth's motion. Following the circuit court's decision, Westpointe filed a "Motion to Dismiss" and a "Motion to Reconsider, Vacate, or Strike the Final Order," which the circuit court denied. From the questions raised in the parties' briefs, we address the following issue:

 I. Did the circuit court err by granting Kalkreuth's motion for a mechanics' lien?

## FACTS

Kalkreuth is a West Virginia corporation that operates a roofing and sheet metal construction business. Westpointe owns the Westpointe Shopping Plaza, which is located in Frederick, Maryland. Included in the shopping plaza is a Burger King restaurant.

Core Development Group, Inc. (Core) contracted with Westpointe to do repair work on the stores in the shopping plaza. Kalkreuth, in turn, subcontracted with Core to supply the labor and materials for the re-roofing of the Burger King and plaza itself. The contract stated that the re-roofing of the Burger King would cost $20,600.[1]

Kalkreuth worked on the Burger King from September 14, 1993 to June 15, 1994. Upon completion of the project, Kalkreuth requested payment of the $20,600. Westpointe refused to pay Kalkreuth because it alleged that Kalkreuth's work was deficient.

On November 30, 1994, Kalkreuth filed a petition to establish and enforce a mechanics' lien against Westpointe in the circuit court.[2] The petition included the identity of the Burger King that Kalkreuth wished to assert the lien against, the location and description of the Burger King, a statement as to the work done and materials supplied, a letter of agreement between the parties, an invoice establishing the costs of repairs as $20,600, and an affidavit from Kalkreuth's Executive Vice–President in support of the complaint.

On December 1, 1994, the circuit court ordered Westpointe to file either a counter-affidavit or a verified answer. The circuit court order mandated that the answer be filed by December 30, 1994. The court also scheduled a hearing for

---

**1.** The contract listed the cost for the entire project at $38,000, with repairs to the plaza costing $18,000. The repairs to the Burger King originally were set at $20,000, with the extra $600 tacked on later for a "change order."

**2.** Kalkreuth also sued Core, but that suit, and Core's subsequent counter-claim, are not part of this appeal.

January 13, 1995. Westpointe did not file the answer by December 30, 1994. On the day of the hearing, the circuit court informed Westpointe that the hearing had to be continued because Kalkreuth's counsel's wife was due to give birth.

On January 23, 1995, the circuit court, without conducting a hearing, signed the "Final Order Establishing the Mechanics' Lien." On January 25, 1995, Westpointe filed a "Motion to Dismiss" and a "Motion to Reconsider, Vacate, or Strike Final Order." On April 10, 1995, the circuit court held a hearing on Westpointe's motions. The circuit court concluded that Westpointe waived its right to a hearing by not filing the required answer by December 30, 1994. The circuit court then rejected Westpointe's motions. Subsequently, Westpointe filed a timely appeal with this Court to contest the order establishing the mechanics' lien.

## RULES OF CONSTRUCTION

The foremost goal of statutory construction is to discern the legislature's intent and the primary source of this intent is the words of the statute itself. *E.g., Comptroller v. Jameson,* 332 Md. 723, 732, 633 A.2d 93 (1993). The words of the statute are accorded their ordinary meaning unless otherwise specified. *E.g., Atkinson v. State,* 331 Md. 199, 215, 627 A.2d 1019 (1993). As a matter of course, when the language of a statute is clear and unambiguous, there is no need to explore the universe of legislative history, or employ other extrinisic aids of construction, in order to ascertain the legislature's intent. *E.g., Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994).

## BACKGROUND

Mechanics' liens are governed by both the Md.Code (1974, 1996 Repl Vol.), §§ 9–101 to 204 of the Real Property Article [3]

---

**3.** Unless otherwise specified, all statutory references throughout this opinion will be from Md.Code (1974, 1996 Repl.Vol.), § 101 *et seq.* of the Real Property Article (RP).

and Md. Rules BG70–73. *National Glass, Inc. v. J.C. Penney Prop. Inc.,* 329 Md. 300, 302 n. 2, 619 A.2d 528 (1993). A party initiates a mechanics' lien proceeding by filing a petition with the circuit court in the county where the property lies. Md.Code, RP § 9–106(a)(1); Md. Rule BG71(a) & (b).[4] This petition must include, *inter alia,* "facts upon which the petitioner claims he is entitled to the lien" and all materials serving as the basis of the lien unless their absence is explained in a filed affidavit. Md.Code, RP § 9–105(a)(2); Md. Rule BG71(b)(vi). If the circuit court finds that there is a proper ground for the lien to attach, it then orders the defendant-owner to show cause why the court should not proceed and grant the lien. Md.Code, RP § 9–106(a); Md. Rule BG73(a).

Once the circuit court issues the show cause order, one of two scenarios can occur. If the owner files its answer to the show cause order, thus raising a matter of dispute as to a material fact, the court must conduct a hearing before issuing a final order. Md.Code, RP § 9–106(a)(3); Md. Rule BG73(c). If, however, the owner does not answer the show cause order, as in the case *sub judice,* the court may issue a final order without a hearing, as long as the facts in the claimant's petition are legally sufficient to establish a mechanics' lien. Md.Code, RP § 9–106(a)(1)(ii); Md. Rule BG73(c). The fail-

---

**4.** Maryland Rule BG71(b) reads, in part:

The action shall be commenced by filing a petition to establish a mechanics' lien. The petition shall be supported by an affidavit and shall contain at least the following:

(i) The name and address of the petitioner;

(ii) The name and address of the owner;

(iii) The nature or kind of work done or the kind of materials furnished ... and the amount or sum claimed to be due....

(iv) A description of the land ... and a description adequate to identify the building; and

(v) If the petitioner is a subcontractor, facts showing that the notice required under Code 9–104 of the Real Property Article was properly mailed or served upon the owner....

(vi) Copies of material papers or parts thereof, if any, which constitute the basis of the lien unless the absence thereof is explained in the affidavit.

Section 9–105(a)(1)(i)–(v) corresponds to Md. Rule BG71(b)(i)-(v).

ure to file the answer to the show cause order "shall constitute an admission for the purpose of the proceedings of all statements of fact in the affidavit supporting the petitioner's claim...." Md.Code, RP 9–106(a)(2); Md. Rule BG73(b).

Westpointe argues in its brief that it was entitled to a hearing in order to present its argument, even though it did not file the answer. Specifically, Westpointe argues that Md.Code, RP 9–106(a)(1) gives a party the option of either filing the answer or appearing at a hearing. Kalkreuth, on the other hand, argues that Md. Rule BG73(a) establishes that the filing of the answer is a prerequisite for a hearing.

■ Westpointe's position is undermined by two separate arguments. First, section 9–106(a)(2) requries that "[i]f the owner desires to controvert any statement of fact contained in the affidavit supporting the petitioner's claim, he must file an affidavit in support of his answer showing cause." Additionally, the Committee note in Rule BG73 states that "this Rule renders impermissible an oral response to a Show Cause Order previously permitted by Md.Code (1974, 1978 Cum. Supp.), § 9–106(a)(1)(i) of the Real Property Article." Accordingly, both arguments dictate that Westpointe had an obligation to file the answer in order to receive a hearing.

■ Thus, the circuit court has three options with respect to issuing a final order. The circuit court can enter: (1) a final order establishing the lien as a matter of law, Md.Code, RP § 9–106(b)(1); Md. Rule BG73(d)(1)(a); (2) a final order denying the lien if the petitioner fails to establish his right to a lien as a matter of law, Md.Code, RP 9–106(b)(2); Md. Rule BG73(d)(1)(b); or (3) an interlocutory order establishing the lien and then set the matter for trial within six months, Md.Code, RP § 9–106(b)(3); Md. Rule BG73(d)(2).[5]

---

**5.** The circuit court's third option is only applicable when the court cannot award the mechanics' lien as a matter of law, but it finds that probable cause exists as to its sufficiency. This option usually applies when the facts of the case are disputed. *Talbott Lumber Co. v. Tymann,* 48 Md.App. 647, 653 n. 3, 428 A.2d 1229, *cert. denied,* 290 Md. 723

## DISCUSSION

Westpointe argues that the circuit court erred by granting Kalkreuth's petition for a mechanics' lien because Kalkreuth did not meet the statutory requirements outlined in section 9–102(a). Kalkreuth counters that it complied with the filing requirements and that Westpointe waived its right to assert the section 9–102(a) argument because it did not file an answer to the show cause order by December 30, 1994.

### I.

In its brief, Westpointe argues that the circuit court lacked subject matter jurisdiction to issue the mechanics' lien. Specifically, Westpointe contends that the facts were not legally sufficient to establish a mechanics' lien, therefore the circuit court lacked jurisdiction to award the lien.

 Westpointe's jurisdictional argument, however, is misplaced. "[J]urisdiction refers to two quite distinct concepts: (i) the *power* of a court to render a valid decree, and (ii) the *propriety* of granting the relief sought." *Moore v. McAllister*, 216 Md. 497, 507, 141 A.2d 176 (1958) (quoting 1 Pomeroy, *Equity Jurisprudence* §§ 129–131 (5th ed.1941)) (emphasis in original). Additionally, "[i]t is only when the court lacks the power to render a decree, for example ... because the court is without authority to pass upon the subject matter involved in the dispute, that its decree is void." *First Federated Com. v. Comm'r*, 272 Md. 329, 334, 322 A.2d 539 (1974).

 Maryland law specifically provides that circuit courts have jurisdiction to hear mechanics' lien cases. Md.Code, RP 9–105(a); *Tyson v. Masten Lumber & Supply, Inc.* 44 Md. App. 293, 296, 408 A.2d 1051 (1979), *cert. denied,* 287 Md. 758 (1980). Therefore, the issue in this case is substantive, not jurisdictional, and our focus is whether the circuit court prop-

---

(1981). This third option, however, is not applicable to the facts of this case.

erly exercised its power in awarding the mechanics' lien for Kalkreuth.

## II.

A circuit court judge must follow a two-step process in awarding a mechanics' lien. First, the circuit court judge has to determine whether there is a factual dispute. Second, the judge has to determine whether the facts as resolved entitled the claimant to the lien as a matter of law.

In the instant case, Kalkreuth and the circuit court judge confused the effect Westpointe's failure to file an answer to the show cause order had on the two-step process. The circuit court believed, and Kalkreuth argues, that section 9–102(a) is a defense that has to be raised by an owner in its answer. Pursuant to this argument, if the "section 9–102(a) defense" is not pled in the answer then it is waived and the court can award the mechanics' lien as a quasi-default remedy. Under this approach, all property would be subject to attachment if the owner did not raise this defense. The "section 9–102(a) defense" argument, however, not only confuses the procedural steps involved in a mechanics' lien proceeding, but it is inconsistent with section 9–102(a)'s legal requirements for the award of a mechanics' lien.

Md. Rule BG73(a) and section 9–106(a)(2) outline what effect not filing an answer has on the mechanics' lien proceeding. Rule BG73(a) states:

> If the defendant [building owner] desires to controvert any statement of fact in the petitioner's affidavit he must file an affidavit or verified answer to the show cause order. The failure to file an opposing affidavit or verified answer within the time allowed to answer the order shall constitute an admission for the purpose of the proceedings of all statements of fact in the affidavit supporting the petitioner's claim, *but shall not constitute an admission that the petition or affidavit in support thereof is legally sufficient.*[6] [Emphasis added.]

---

**6.** The same language appears in section 9–106(a)(2).

 Therefore, Westpointe's failure to file an answer meant two things: (1) the circuit court had to accept the facts articulated in Kalkreuth's petition as true; and (2) Westpointe lost the right to assert affirmative defenses that the Maryland Rules deem waived unless they are specifically pled. *See, e.g.,* Md. Rule 2–323(g) (listing 21 affirmative defenses that are waived unless raised in the answer to the complaint); *see also Ocean Plaza Joint Ven. v. Crouse Constr.,* 62 Md.App. 435, 445, 490 A.2d 252 (1985) (stating that the owner waived the defense of "waiver" because it did not file it with the answer). Thus, once the deadline passed, the circuit court had before it the undisputed facts of the case and had the power to award the mechanics' lien without a hearing if the facts in Kalkreuth's petition were legally sufficient. The circuit court, however, failed to apply the facts of the case to the law and instead awarded the mechanics' lien as part of a quasi-default remedy.

 Section 9–102 outlines which property is subject to a lien. The sub-section reads as follows:

*Every building erected and every building repaired, rebuilt, or improved to the extent of 25 percent of its value is subject to establishment of a lien in accordance with this subtitle for the payment of all debts,* without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building,....

Md.Code, RP § 9–102(a) (emphasis added).[7] Section 9–102(a) establishes a threshold requirement for the issuance of a lien; for a lien to be established, when it is to be applied to a building which has undergone repair, repairs to the building must constitute twenty-five percent of the building's value. Accordingly, property not listed in this section or not complying with the specific statutory requirements is not subject to

---

7. In the 1996 legislative session, both the House of Delegates and the Senate enacted bills that changed section 9–102(a)'s threshold for establishing a lien from 25% to 15%. S. 196 (Feb. 22, 1996); H.B. 184 (Feb. 13, 1996). Pending approval by the Governor, the new 15% level will take effect on October 1, 1996.

the attachment of a lien. *See 5500 Coastal Hwy. v. Elect. Equip. Co.*, 305 Md. 532, 536, 505 A.2d 533 (1986) (stating that mechanics' liens exist by virtue of statute and that a court cannot attach a lien unless it falls within the statutory provisions).

■ Section 9–102(a) is not a defense that is waived if the owner does not file an answer. This Court and the Court of Appeals have consistently applied section 9–102 as a legal prerequisite for the issuance of a mechanics' lien. *E.g., Hurst v. V & M of Virginia*, 293 Md. 575, 446 A.2d 55 (1982). It is a mandatory requirement that must be satisfied before a circuit court can issue a mechanics' lien.

The circuit court was under an obligation to apply the facts established in Kalkreuth's petition to the law in order to determine if Kalkreuth qualified for a mechanics' lien. The circuit court did not fulfill this obligation.

■ It was Kalkreuth's burden to establish a sufficient factual basis that the circuit court could rely upon in order to establish a mechanics' lien. *Talbott Lumber Co. v. Tymann*, 48 Md.App. 647, 652, 428 A.2d 1229, *cert. denied*, 290 Md. 723 (1981); *see also* Md.Code, RP § 9–106(b)(2) (stating that "if the petitioner failed to establish his right to a lien as a matter of law, then a final order shall be entered denying the lien for cause shown"); Md. Rule BG73(d)(1)(a) (quoting the same rule as Md.Code, RP § 9–106(b)(2)). This burden requires that a claimant allege that its repairs constituted at least twenty-five percent of the value of the building repaired, or that the claimant did work on a building being constructed. *See* Md.Code, RP § 9–105(a)(2) (requiring that a lien petition must contain "[a]n affidavit ... setting forth facts upon which the petitioner claims he is entitled to the lien in the amount specified ..."). In this case, Kalkreuth failed to carry its burden.

■ Kalkreuth's petition, on its face, was insufficient to establish a mechanics' lien as a matter of law. The facts included in the petition established that Kalkreuth's repairs were less than twenty-five percent of the value of the Burger

King. The record indicates that the Burger King was worth $800,000 before the repairs. The repairs cost only $20,600. That means that Kalkreuth's repairs were only 2.58% of the total value of the Burger King.

Kalkreuth attempts to get around the twenty-five percent threshold by arguing that the Burger King had no value before the repairs because it needed a new roof. Thus, following Kalkreuth's argument, because the Burger King had no value before the repairs, the repairs completed by Kalkreuth constituted more than twenty-five percent of the value of the Burger King.

▆▆ Kalkreuth cannot cite any authority to support its all or nothing valuation argument, and with good reason; not only is Kalkreuth's value argument inconsistent with the wording of section 9–102(a), it misconstrues the basic principles underlying the valuation of property. Property does not, ipso facto, lose all value because it needs repairs. "The economic value of something is how much someone is willing to pay for it or, if he has it already, how much money he demands for parting with it." Richard A. Posner, *Economic Analysis of the Law* 12 (4th ed.1992). Kalkreuth's claim that the Burger King had no value is the equivalent of saying that a pair of sneakers have no value because they are missing shoe laces.

We recognize the remedial nature of section 9–102(a). Md. Code, RP § 9–112. It was not, however, intended to give every contractor and subcontractor the right to attach a mechanics' lien to property. If it were, the legislature would not have included the twenty-five percent requirement. *See, e.g., Gietka v. County Executive for Baltimore County,* 283 Md. 24, 27, 387 A.2d 291 (1978) (stating that "where there is no ambiguity in the language, words used [in the statute] are conclusively presumed to express the intent of the body enacting the legislation"). Kalkreuth, therefore, has no other choice but to pursue other contractual remedies, such as suing the contractor Core, in order to collect the $20,600.

## III.

 In this case, Westpointe filed a timely motion pursuant to Rule 2–534 requesting that the circuit court "Reconsider, Vacate, or Strike" the final order. Even though Westpointe explained to the circuit court that the subject property could not validly be the subject of a mechanics' lien, the court refused to strike its improper order. Based on our discussion in section II, *supra,* the circuit court's refusal to strike the order was an obvious abuse of discretion. *See Abrams v. Gay Investment Co.,* 253 Md. 121, 124, 251 A.2d 876 (1969) (finding that the circuit court did not abuse its discretion by not vacating a default judgment because the moving party failed to present a meritorious ¡defense or other equitable circumstance that would justify striking the order).

For the aforegoing reasons, the decision of the circuit court must be reversed.

**JUDGMENT REVERSED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY WITH INSTRUCTIONS TO ENTER JUDGMENT FOR APPELLANT.**

**APPELLEE TO PAY COSTS.**